SABINE TOWING & TRANSPOR-
TATION CO., INC., Appellant,

v.

HOLLIDAY INSURANCE AGENCY,
INC., Appellee.

No. 06–00–00099–CV.

Court of Appeals of Texas,
Texarkana.

Submitted April 4, 2001.

Decided June 13, 2001.

Opinion Overruling Rehearing
Aug. 9, 2001.

**58**

R. Andrew Black, F. William Mahley, Strasburger & Price, LLP, Houston, for appellant.

Howard L. Close, Nathan M. Brandimarte, Orgain, Bell & Tucker, Beaumont, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Sabine Towing & Transportation Co., Inc. (Sabine) appeals from a take-nothing judgment in its suit against Holliday Insurance Agency, Inc. (Holliday) for negligent misrepresentation and violation of TEX.INS.CODE ANN. art. 21.21 (Vernon Supp. 2001). In two points of error, Sabine challenges the legal and factual sufficiency of the evidence, contending that the trial court erred by finding that Sabine's suit was barred by the two-year statute of limitations; and that Holliday neither made misrepresentations as to insurance coverage nor violated Article 21.21 of the Texas Insurance Code. We find that the trial court correctly held that Sabine's suit was barred by limitations, and we affirm the judgment.

Sabine's suit arose from a personal injury sustained by Danny LeLeux, an employee of SuperIn, Inc., one of Sabine's subcontractors. In February 1991, LeLeux was working on the S/S Pecos, one of Sabine's vessels docked in Port Arthur, Texas, and he slipped and injured his back. In contemplation of situations such as this, Sabine required all its contractors to have a current certificate of insurance on file with its insurance and risk management department. In early October 1990, SuperIn purchased a comprehensive general liability (CGL) policy with ship repairers liability coverage from Holliday Insurance Agency. In addition to the CGL, the policy also contained blanket waivers of subrogation as well as blanket waivers of additional insureds endorsements. Because SuperIn routinely performed work for Sabine, a copy of its certificate of insurance was forwarded to Sabine via Holliday on October 16, 1990. LeLeux filed suit against Sabine on June 12, 1991. Sabine sought liability coverage under SuperIn's insurance policy via the blanket waiver of subrogation and additional insureds endorsement provisions included on the insurance certificate on file for SuperIn, which were named in favor of Sabine. Counsel for Sabine sent a letter to Edna Holliday, president of Holliday, on July 8, 1991, seeking a determination of coverage. Sabine did not receive a response until April 1992, approximately nine months later, when Richard Schwartz, on behalf of

Holliday, indicated that Sabine was not covered by SuperIn's policy. On March 21, 1994, Sabine filed a third-party action against Holliday for negligently misrepresenting that Sabine was an additional insured under SuperIn's policy.[1] Sabine settled with LeLeux in July 1994 for $250,000.00, of which all but $25,000.00 was paid by Sabine's liability insurance carrier. After a nonjury trial in November 1999, the trial court rendered a take-nothing judgment in favor of Holliday.

Sabine attacks both the legal and factual sufficiency of the trial court's findings that (1) the two-year statute of limitations barred its causes of action, arguing that the discovery rule should apply to defer the commencement of the limitations period, and that (2) Holliday neither negligently misrepresented that Sabine was covered by SuperIn's policy nor violated Article 21.21 of the Texas Insurance Code.

When both legal and factual sufficiency grounds are raised, we review the legal sufficiency point first to determine whether there is any probative evidence to support the jury's verdict. *See Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981). The traditional legal sufficiency or no-evidence test requires us to consider only the evidence favorable to the verdict, disregard all evidence and inferences to the contrary, and determine whether any probative evidence exists to support the verdict. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 51 (Tex. 1997); *Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326–27 (Tex.1993); *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992). If more than a scintilla of evidence supports the jury's finding, the no-evidence challenge fails. *See Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996);

*Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex.1970).

The standard for a factual sufficiency review requires us to review all the evidence, both favorable and unfavorable to the verdict, and determine whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Findings of fact and conclusions of law have the same force and dignity as a jury's verdict, and are reviewable for sufficiency of the evidence by the same standards that are applied in reviewing a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). Although we are required to review all the evidence, we may not interfere with the fact finder's resolution of conflicts in the evidence. *See Am.'s Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 628–29 (Tex.App.—San Antonio 1996, writ denied); *Lawson–Avila Constr., Inc. v. Stoutamire*, 791 S.W.2d 584, 594 (Tex.App.—San Antonio 1990, writ denied). Where conflicting evidence is presented, the fact finder's verdict on such matters is generally considered to be conclusive. *See Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 511–12 (1947).

██ A cause of action generally accrues, and the statute of limitations begins

---

1. In April 1999, Sabine amended its original petition to include violations of Tex. Ins.Code

Ann. art. 21.21 (Vernon Supp.2001).

to run, when facts come into existence that authorize a party to seek a judicial remedy. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex.1998), *citing Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). In most cases, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996). More specifically, actions for violations of the Insurance Code or for negligent misrepresentation must be brought within two years of the day the cause of action accrues. *See* Tex.Ins.Code Ann. art. 21.21, § 16(d) (Vernon Supp.2001); *Milestone Props., Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 118 (Tex.App.—Austin 1993, no writ).

■ The discovery rule exception defers the accrual of a cause of action until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the facts giving rise to the cause of action. *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex. 1994); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). The discovery rule thus delays the commencement of the limitations period when the nature of the injury is inherently undiscoverable and evidence of the injury is objectively verifiable. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996); *Tanglewood Terrace v. City of Texarkana*, 996 S.W.2d 330, 337 (Tex.App.—Texarkana 1999, no pet.). These two elements of inherent undiscoverability and objective verifiability balance these conflicting policies in statutes of limitations: the benefits of precluding stale claims versus the risks of precluding meritorious claims that happen to fall outside an arbitrarily set period. *S.V. v. R.V.*, 933 S.W.2d at 6. An injury is inherently undiscoverable if it is the type

of injury that is not generally discoverable by the exercise of reasonable diligence. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex.1998) *citing Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d at 455. In order for an injury to be inherently undiscoverable, the injury need not be absolutely impossible to discover. *S.V. v. R.V.*, 933 S.W.2d at 7. The discovery of a particular injury depends on the circumstances of the injury and the plaintiff's diligence.

■ Holliday contends that in Texas the discovery rule does not apply to negligent misrepresentation causes of action. To support this position Holliday relies extensively on the decision in *Kansa Reinsurance Co. v. Congressional Mortgage Corp. of Texas*, 20 F.3d 1362 (5th Cir.1994). In *Kansa*, the court held that the discovery rule does not apply to negligent misrepresentation actions, stating, that, "such a claim should be subject to the rules of accrual governing negligence, and we will apply the general Texas rule that the limitations period for negligence actions runs from the commission of the negligent act, not the date of the ascertainment of damages." 20 F.3d at 1372, *quoting Fusco v. Johns Manville Prods. Corp.*, 643 F.2d 1181, 1183 (5th Cir.1981).

In *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, however, the Texas Supreme Court, in an attempt to provide predictability and consistency, articulated a two-pronged test for applying the discovery rule: that an injury be inherently undiscoverable and be objectively verifiable. The court in that case engaged in a discovery rule analysis of a negligent misrepresentation claim, ultimately holding that because the injury was not inherently undiscoverable, the discovery rule did not toll the limitations period. *Id.* at 886. Recently the court has held that by implementing this two-pronged categorical ap-

proach to the discovery rule, we no longer determine when an injury was actually discovered in a particular case, but rather whether that case is the type of case to which the discovery rule applies. *Apex Towing Co. v. Tolin*, 41 S.W.3d 118 (Tex. 2001); *HECI Exploration Co. v. Neel*, 982 S.W.2d at 886. Additionally, two Texas courts of appeals have similarly applied the discovery rule to negligent misrepresentation causes of action. *Matthiessen v. Schaefer*, 27 S.W.3d 25, 31 (Tex.App.—San Antonio 2000, pet. denied); *Hendricks v. Thornton*, 973 S.W.2d 348, 365 (Tex. App.—Beaumont 1998, pet. denied).

In light of *HECI*, which postdates the Fifth Circuit's decision in *Kansa*, as well as our sister courts' decisions in *Matthiessen* and *Hendricks*, we find that the discovery rule is applicable to negligent misrepresentation causes of action.[2]

■ We now turn to the two-pronged test to determine whether Sabine's injury—Holliday's denial of coverage—was inherently undiscoverable and objectively verifiable. First, with regard to the inherent undiscoverability prong, it is important to establish the commercial backdrop on which Sabine, SuperIn, and Holliday were operating. According to two insurance law commentators, contracting parties generally use a variety of risk-shifting measures

to minimize the costs of performance and to allocate responsibility for contingent liabilities. *See* Samir B. Mehta, *Additional Insured Status in Construction Contracts and Moral Hazard*, 3 CONN. INS. L.J. 169 (1996–97); William E. O'Neal, *Insuring Contractual Indemnity Agreements Under CGL, MGL and P & I Policies*, 21 MAR. LAW. 359 (1997). One of these measures is the use of insurance procurement clauses that require a party to procure insurance, to name the other party as an additional insured, and to effect a waiver of subrogation from the insurer. *See* O'Neal, *supra*. One party's acquisition of additional insured status on another's CGL policy is a common risk management technique. *See* Mehta, *supra*. CGL policies, like that purchased by SuperIn from Holliday, provide insurance for tort liabilities. *See* O'Neal, *supra*. The broad grant of coverage in the CGL policies obligates the insurer to pay sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage. However, while contractual liability has become a standard element of coverage in most CGL policies, O'Neal admonishes indemnitees that they should by no means become complacent and assume, when evidence of insurance is provided confirming compliance with insurance procurement clauses, that coverage is actually availing. This admo-

---

2.  *But see Davis v. Minnesota Life Ins. Co.*, No. 03–99–00882–CV, 2000 WL 795887, 2000 Tex.App. LEXIS 4137 (Tex.App.—Austin June 22, 2000, no pet. h.). There, the court of appeals stated, in a footnote, that while the discovery rule may be applied to Insurance Code, Deceptive Trade Practice Act, and fraud causes of action, *see* TEX.BUS. & COM.CODE ANN. § 17.565 (Vernon 1987); TEX.INS.CODE ANN. art. 21.21, § 16(d) (Vernon Supp.2001); *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997), it is not clear whether the discovery rule may be applied to negligent misrepresentation causes of action. *Davis v. Minnesota Life Ins. Co.*, 2000 WL at *3 n. 3, 2000 Tex. App. LEXIS at *10 n. 3. *Compare Matthies-*

*sen v. Schaefer*, 27 S.W.3d 25, 31 (Tex.App.—San Antonio 2000, pet. denied) (holding that the discovery rule may be applied to actions involving negligence, gross negligence, breach of fiduciary duty, and negligent misrepresentation), and *Hendricks v. Thornton*, 973 S.W.2d 348, 365 (Tex.App.—Beaumont 1998, pet. denied) (holding that the discovery rule may be applied to negligent misrepresentation causes of action), *with Kansa Reinsurance Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1372–73 (5th Cir.1994) (holding that Texas courts do not apply the discovery rule to negligent misrepresentation causes of action).

nition is particularly important in light of variances in policy language and the different forms in use, some of which limit the type of contracts insured. These limitations, such as requiring written contracts between the insured and a third party for coverage to attach, as in this case, necessitate that third parties like Sabine exercise diligence to ensure that they are in fact covered by the policy indicated in an insurance certificate.

In this case, the evidence adduced at trial showed that Sabine was provided a certificate of insurance indicating that SuperIn was insured by Holliday. This certificate was sent to Sabine's insurance and risk management department in care of department manager Mary Ann Duplantis on October 16, 1990. As required by Sabine,[3] SuperIn's certificate of insurance contained a blanket waiver of subrogation and an additional insured endorsement in favor of Sabine. However, the certificate also included the following language appearing prominently in the upper right-hand corner: "THIS CERTIFICATE IS ISSUED AS A *MATTER OF INFORMATION ONLY* AND *CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.*" (Emphasis added.) Additionally, Sabine was required to send all certificates of insurance to Sequia Industries, its parent company, for approval. Although Sequia customarily returned certificates of insurance to Sabine with "approved" stamped on them, Ms. Duplantis testified that she did not recall receiving the SuperIn certificate back from or approved by Sequia. For some reason, de-

spite this apparent procedural departure, Sabine authorized SuperIn to begin work. Notwithstanding the lack of approval by Sequia, Sabine allowed nine months to elapse between July 8, 1991, the date it sent a letter regarding coverage to Holliday, and April 28, 1992, the date it received the letter indicating that Sabine was not insured under the SuperIn policy, without making any further contact with Holliday.

After reviewing the evidence for legal and factual sufficiency, we cannot say that Holliday's denial of coverage was an inherently undiscoverable injury. In *Prieto v. John Hancock Mut. Life Ins. Co.,* the court held that the "inherently undiscoverable" prong is satisfied when the nature of the injury is unlikely to be discovered even through due diligence. *Prieto v. John Hancock Mut. Life Ins. Co.,* 132 F.Supp.2d 506, 513 (N.D.Tex.2001), *quoting Browning Mfg. v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197, 214 (5th Cir.1999). The court reasoned that this first prong constitutes less than absolute impossibility of discovery, but more than mere failure to discover, and held that an injury that could have been discovered through the exercise of due diligence does not satisfy the inherent undiscoverability requirement. *Id., citing In re Coastal Plains, Inc.* 179 F.3d at 215.

■ All Sabine needed to do to discover the alleged injury was to conduct a routine check regarding the insurance certificate with Holliday and inquire whether insurance coverage was in effect.[4] Unfortu-

---

**3.** Sabine required its subcontractors to include a waiver of subrogation and an additional insured endorsement in favor of Sabine, before the commencement of any labor aboard Sabine's vessels.

**4.** Our review of the record indicates that SuperIn's insurance coverage contained an exclusion for any bodily injuries directly or

indirectly caused by asbestos. This was subsequently confirmed during oral argument by counsel for Holliday. Since LeLeux was injured while removing asbestos from the S/S Pecos, it is arguable that even if Sabine was covered by SuperIn's policy this injury would not have been covered.

nately, Sabine failed to seek any additional assurances from Holliday other than the bare insurance certificate indicating that Sabine was an additional insured pursuant to its insurance procurement requirement. Had Sabine exercised due diligence, it would have insisted on a formal approval from Sequia before allowing SuperIn to commence work. Finally, the fact that Sabine allowed nine months to elapse before receiving a response from Holliday suggests that Sabine failed to exercise the reasonable diligence Texas courts have traditionally required to trigger exemption from statutes of limitations under the discovery rule. Sabine's failure to discover its lack of coverage does not save it from being barred by limitations. Accordingly, we find that the two-year statute of limitations did expire on October 16, 1992, two years after Sabine first received SuperIn's certificate of insurance, almost thirteen months before Sabine first filed suit against Holliday.

In light of the dispositive nature of this point, we do not reach the issue of whether the trial court erred in finding that Holliday neither negligently represented to Sabine that it was covered by SuperIn's policy, nor violated Article 21.21 of the Texas Insurance Code.

For the reasons stated, we affirm the judgment of the trial court.

### Concurring Opinion by Justice GRANT

The approach to the application of the discovery rule for the commencement of the running of the statute of limitations may provide more predictability and consistency, but I believe that an application of the discovery rule on a case-by-case basis is more likely to provide a just result. In effect, the statute of limitations is the legal application of the adage of equity that one who sleeps on one's rights is not entitled to relief, but it is basically unfair to begin the following of the statute of limitations until an injury is known or apparent. Even if an injury is discoverable, an injured party should not be denied relief if that party has no notice that such an injury has occurred. Unless there is some type of notice, then there is no reason to seek to discover if a wrongful act has occurred. That a person knew or should have known should be the test applied to determine the commencement of the running of the statute of limitations on all actions, be it breach of contract or commission of a tort.

When a person knows or should have known of an invasion of a legally protected interest and an injury resulting therefrom, then that person is in a position to seek relief from the courts. A construction of the commencement of the running of the statute of limitations without providing the knew-or-should-have-known test is in reality a statute of repose. Our Legislature has passed statutes of repose barring causes of action regardless of the reasons for tolling the statute. These statutes of repose are for the purpose of ending the responsibility for particular kinds of activities at a predictable date. Characteristically, the statutes of repose are much longer than the regular statutes of limitations. *See generally* RESTATEMENT (SECOND) OF TORTS § 899 (1979).

If we continue to make the establishing of the tolling of statutes of limitations more difficult, we are moving toward statutes of repose without appropriate lengthening of the time period. This is an unfair approach for those barred from bringing suits for legal injuries even if they have been brought in a timely manner after the discovery of the injury.

I realize that under old English law, there was no doctrine of tolling based on discovery. However, it has been adopted in Texas and other states because it is a

fair rule and the requirement of due diligence is a fair test—but only after there is some notice for the injured party to use due diligence.

I write this concurrence because I fear that a trend to favor the commencement of the running of the statutes of limitations under all circumstances is a trend to unfairly deny justice even to those who have not been derelict or untimely in pursuing their causes of action as soon as discovered.

## ON REHEARING

CORNELIUS, Chief Justice.

Sabine Towing & Transportation Co., Inc. (Sabine) contends that we have erred by holding that its Article 21.21 cause of action is barred by limitations.[5] This contention is predicated on the notion that the limitations period for its Insurance Code action did not begin to run on October 16, 1990, the date it received the certificate of insurance from Holliday Insurance Agency, Inc. (Holliday), as we have held, but rather began on April 28, 1992, the date on which Holliday denied coverage. As support for this proposition, that limitations does not begin to run until coverage is denied, Sabine cites three cases: *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex.1998); *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96 (Tex. 1994); and *Gilbreath v. White*, 903 S.W.2d 851 (Tex.App.—Texarkana 1995, no writ). We find each case distinguishable from the present facts and overrule Sabine's motion for rehearing.

The Texas Supreme Court was asked to decide whether, in a suit by an insured against its agent for the negligent breach of the agent's duty to obtain insurance, the injury-producing cause was the denial of coverage. *Johnson & Higgins of Texas,*

*Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d at 514. Although the Court ultimately held that limitations did commence on the date coverage was denied, it so held under very different circumstances from those here. In the *Johnson & Higgins*, case, Kenneco Energy itself purchased the insurance policies at issue from London underwriters, using Johnson & Higgins (J & H) as a broker. This first-party relationship is important because Kenneco's injuries were based on additional coverages it specifically sought from J & H, which were subsequently denied. Of the two certificates of insurance obtained from J & H evincing these additional coverages, one for contingency coverage and one for insufficient coverage, only the latter was recognized as valid, and it only to the extent of physical loss or damage to the oil cargo, not lost profits.

Sabine, at best, claims a third-party relationship with SuperIn's insurance carrier, Holliday. Consequently, Sabine neither contacted nor dealt with Holliday until it filed its insurance claim on July 8, 1991, nine months after first receiving the certificate of insurance. The main reason provided to Sabine for Holliday's refusal of coverage was that Holliday required a written contract between its insured, SuperIn, and any additional insureds. Obviously, had Sabine known about this formal contractual requirement it would not have allowed SuperIn's employees to board its vessels unless and until a written contract was executed bringing Sabine in compliance with Holliday's coverage. Sabine contends that our holding places it in an untenable business position. We disagree. The fact that Sabine has an insurance and risk management department demonstrates that it is fully capable of conducting at least a cursory

---

5. Tex.Ins.Code Ann. art. 21.21 (Vernon Supp. 2001).

inquiry as to whether coverage is availing as per the bare insurance certificate it has on file. In light of Sabine's apparent policy of requiring subcontractors like SuperIn to obtain additional insurance coverage, it is not so unreasonable to imagine that Sabine would actively ascertain both the compliance and viability of such coverage.[6] The untenable position to which Sabine objects was created of its own devices—the lack of a written contract between itself and SuperIn.

Sabine also refers us to *Celtic Life Ins. Co. v. Coats*, a case in which the insured, Coats, sued his insurer, Celtic Life Insurance, for a misrepresentation regarding the amount of psychiatric coverage available under an employer-furnished health insurance plan. *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96. Coats, the owner of Aloha Pools, sought health coverage for the company's employees and their families, specifically seeking coverage of $20,000.00 or more for psychiatric care. Before purchasing the policy, Coats' business manager noticed that the recommended policy only covered $10,000.00 for psychiatric care; however, Celtic's agent assured her that the figure was limited to out-patient care. Based on this representation, Coats purchased the Celtic policy. Subsequently, Coats' son was admitted to a hospital for psychiatric care. Coats filed a claim for his son's in-hospital psychiatric treatment, but Celtic only paid $10,000.00 of the $27,000.00 expense.

The Texas Supreme Court, faced with a first-party insured who was not provided the coverage it specifically sought from its insurer, held that the Article 21.21 cause of action accrued on the date the insurance coverage was denied. *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d at 100. Despite Sabine's contention that we should follow the above holding, we find that the first-party status dealt with in *Celtic Life Insurance* and the third party status of Sabine in the present case precludes us from applying this "accrual on the date of denial" rule. Underpinning the court's rationale in *Celtic Life Insurance* is the first-party relationship between Coats and Celtic. While the court found that Coats specifically requested $20,000.00 in coverage and received only $10,000.00 after the misrepresentation by Celtic's agent, and held that the cause of action accrued on the date of denial by Celtic, its holding carries an implied finding that although the misrepresentation was injurious, that fact could not be determined unless and until an insurance claim was filed and subsequently denied. Because Coats was supplied with the representation that the requested coverage existed, it was unnecessary for him to delve any further to ascertain whether such was the case. In this case, Sabine was provided with only a bare certificate of insurance which specifically indicated that the certificate of insurance was issued for informational purposes only and conferred no rights on Sabine. We cannot say that a direct misrepresentation from an insurance agent, as in *Celtic Life Insurance*, is sufficiently analogous to the circumstances presented in this case. Accordingly, we are not inclined to apply the "accrual on the date of denial" rule in this case.

We now turn to *Gilbreath v. White*, a case in which we held that damage to property by an ice storm was not the triggering event for the commencement of the statute of limitations for a Deceptive Trade Practices Act or Insurance Code violation, but that limitations began to run on the date of the alleged misrepresenta-

---

6. In fact, Sabine concedes as much in its first brief to this Court stating, "[i]f [we] had known [we] [were not] an additional insured under SuperIn's insurance policy, SuperIn would not have been allowed to perform work for [us]."

tion or the discovery thereof. *Gilbreath v. White,* 903 S.W.2d 851 (Tex.App.—Texarkana 1995, no writ). The case arose out of a mortgage transaction executed in favor of Dale Gilbreath and Steve Milner. Gilbreath and Milner had loaned J.M. Young $30,000.00, and in return Young gave the two a deed of trust to some land and agreed to obtain insurance for any improvements to the land. Young obtained the insurance from Hocheim Prairie Farm Mutual Insurance Association (Hocheim) through its agent, Billy D. White. Subsequently, a riding arena on the property sustained extensive damage during an ice storm, and Hocheim denied coverage pursuant to a policy exclusion.

Although *Gilbreath* presents facts that are arguably more analogous to this case than either of the above-discussed cases, the facts are sufficiently distinguishable to provide for a different outcome. First, the issue presented in *Gilbreath* was not whether insurance coverage existed, but rather whether coverage under the policy was properly denied. In the present case, Holliday wholly denied coverage to Sabine because no such coverage existed. Next, the parties in *Gilbreath* could not have known that Hocheim would deny coverage based on fine print in its insurance policy until such coverage was denied, but Sabine could readily ascertain the existence of insurance coverage by requesting a review by its insurance and risk management department.

Because the cases cited by Sabine are distinguishable from the present case, specifically that Sabine could have and should have undertaken a review of whether Holliday was providing it insurance coverage, we overrule its motion for rehearing.