11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Dr. James
Knott, M.D.

Appellant

Vs.      
            No. 11-00-00243-CV --  Appeal from Dallas
County

The Provident Life and Accident
Insurance Company 

and Debra
Lucille Townley, as Independent Executor

of the Estate of Ellis Garland Gatlin, Deceased



            Appellees

 

This
appeal concerns a claim for benefits under two disability insurance policies
issued by The Provident Life and Accident Insurance Company (Provident).  Dr. James Knott, M.D., an
obstetrician/gynecologist, purchased the disability insurance policies in the
1970s from his insurance agent, Ellis Garland Gatlin, deceased.   Dr. Knott received total disability
benefits under the policies for 24 months from 1996 until 1998.  He filed suit against Provident and the
independent executor of Gatlin=s estate after Provident stopped paying him benefits in 1998.  The trial court granted summary judgment in
favor of Provident and Gatlin=s independent executor on all claims asserted by Dr. Knott.  We affirm in part and reverse and remand in
part.








Dr. Knott
sustained a fracture to his spine as a result of a plane crash which occurred
in June 1985.  He was unable to work for
approximately two months after the injury.  
Upon returning to his practice on a full-time basis in August 1985,
there were various medical procedures which he could no longer perform as a
result of his injury.  Dr. Knott
testified that he was never able to perform these procedures after the
accident.   He initially applied for
total disability benefits under the policies in 1985.  Provident denied this claim on the basis that each of the
policies had a 90-day elimination period which Provident asserted that Dr.
Knott had not met by his return to work in less than 90 days.  Dr. Knott did not contest Provident=s denial of total disability benefits at that
time.  Instead, he accepted Provident=s offer to pay him residual disability
benefits for partial disability.   In
order to receive residual disability benefits, Dr. Knott was required to show
that he had sustained a loss of income as a result of his disability.  Dr. Knott received residual disability
benefits periodically from 1986 until 1989. 
Dr. Knott stopped receiving residual disability benefits in 1989 because
his earnings met or exceeded the amount of his earnings prior to the
accident.  

Dr. Knott
neither applied for nor received any type of disability benefits from Provident
from 1989 through 1995.  He remained
covered under the policies during this period although he did not pay any
premiums.[1]  Dr. Knott=s 65th birthday occurred in August 1995.  He filed a second claim for total disability benefits under the
policies in January 1996.   This second
claim coincided with Dr. Knott reducing his workload to a part-time basis.  Provident began paying Dr. Knott total
disability benefits based on the second claim in April 1996 after the 90-day
elimination period had been satisfied. 
Provident terminated his benefits in March 1998 after 24 months of
benefits had been paid.  Provident based
this action on a provision of the policies which provided for a maximum of 24
months of benefits for disabilities commencing after the insured=s 65th birthday.  Dr. Knott filed suit asserting that Provident=s termination of benefits constituted a
breach of the insurance contract and occurred in bad faith.  He alleges that Gatlin misrepresented the
terms of the policies to him at the time of purchase.  

When reviewing a traditional motion for summary judgment, the
following standards apply: (1) the movant for summary judgment has the burden
of showing that there is no genuine issue of material fact and that it is
entitled to judgment as a matter of law; (2) in deciding whether there is a
disputed material fact issue precluding summary judgment, evidence favorable to
the non-movant will be taken as true; and (3) every reasonable inference must
be indulged in favor of the non-movant and any doubts resolved in its favor.
TEX.R.CIV.P. 166a; Goswami v. Metropolitan Savings and Loan Association, 751
S.W.2d 487, 491 (Tex.1988); Nixon v. Mr. Property Management Company, Inc., 690
S.W.2d 546, 548-49 (Tex.1985); City of Houston v. Clear Creek Basin Authority,
589 S.W.2d 671, 676 (Tex.1979). 








The order of the trial court did not specify the grounds for
its summary judgment; therefore, summary judgment will be affirmed on appeal if
any theories advanced are meritorious. 
State Farm & Casualty Company v. S.S. & G.W., 858 S.W.2d 374,
380 (Tex.1993); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.1989).  Provident=s motion for summary judgment alleged nine
grounds while the motion for summary judgment filed by Gatlin=s independent
executor alleged five grounds.  Dr.
Knott attacks each of these grounds on appeal. 


Dr. Knott=s Issue No. 8 asserts that the trial court
erred in granting summary judgment on Provident=s claim that the Employee Retirement Income Security Act of 1974, 29
U.S.C.A. ' 1002 et seq. (West 1999), (ERISA) preempts
all of his state law claims.[2]  Provident contends that the arrangement for
Dr. Knott=s disability insurance policies constituted
an "employee welfare benefit plan" under ERISA.  ERISA defines an "employee welfare
benefit plan" in Section 1002(1) as:

[A]ny
plan, fund or program...established or maintained by an employer or by an
employee organization, or by both, to the extent that such plan, fund, or
program was established or is maintained for the purpose of providing for its
participants or their beneficiaries, through the purchase of insurance or
otherwise...medical, surgical, or hospital care or benefits, or benefits in the
event of sickness, accident, disability, death or unemployment.

The arrangement presented
in this case involves disability insurance. 









In
examining a particular arrangement to determine whether it qualifies as an
employee welfare benefit plan under ERISA, a court should inquire whether a
plan:  (1) exists; (2) falls within the
exceptions established by the Department of Labor;  and (3) satisfies the primary elements of an ERISA employee
welfare benefit plan.  Meredith v. Time
Insurance Company, 980 F.2d 352, 355 (5th Cir. 1993).  Thus, a court confronted with the question of whether a plan
qualifies as an employee welfare benefit plan within the scope of ERISA must
initially satisfy itself that there is in fact a plan at all.  Meredith v. Time Insurance Company, supra at
355.   To determine whether a plan,
fund, or program exists, a court must determine from the surrounding
circumstances whether a reasonable person could ascertain the intended:  (1) benefits; (2) beneficiaries;  (3) 
source  of  financing; 
and  (4) procedures for receiving
benefits.  Donovan v. Dillingham, 688
F.2d 1367, 1373 (11th Cir. 1982); see also Memorial Hospital System v.
Northbrook Life Insurance Company, 904 F.2d 236,240 (5th Cir.1990)(adopting Donovan
for the Fifth Circuit). 

There are
two primary elements of an ERISA employee welfare benefit plan.   A court must consider:  (1) whether an employer established or
maintained the plan  and (2) whether the
employer intended to provide certain benefits to its employees.  MDPhysicians & Associates, Inc. v. State
Board of Insurance, 957 F.2d 178, 183 (5th Cir.), cert. den=d, 506 U.S. 861 (1992);  Hansen
v. Continental Insurance Company, 940 F.2d 971, 978 (5th Cir. 1991).   Whether a particular set of insurance
arrangements constitutes an employee welfare benefit plan is a question of
fact.  McNeil v. Time Insurance Company,
205 F.3d 179, 189 (5th Cir. 2000); Zavora v. Paul Revere Life Insurance
Company, 145 F.3d 1118, 1120 (9th Cir. 1998). 
The burden of establishing the existence of an ERISA plan is on
Provident.  Zavora v. Paul Revere Life
Insurance Company, supra at 1120.              The Fifth Circuit has held that a plan in which the only participants
are the owners or partners does not constitute an ERISA benefit plan.  McNeil v. Time Insurance Company, supra at
190; Meredith v. Time Insurance Company, supra at 357-58; see Parker v. Parker,
897 S.W.2d 918, 925 (Tex.App. - Fort Worth 1995, writ den=d). 
The summary judgment evidence indicates that a total of five disability
insurance policies were issued by Provident to Dr. Knott and two other
physicians with whom he was associated. 
The other physicians were Dr. Knott=s partners in a professional association for most of the time in which
the policies were in force.  
Consequently, there is summary judgment evidence that the only persons
covered by the disability policies were owners of the medical practice.  This evidence raises a fact question under
the holdings in McNeil and Meredith that the only participants
were owners or partners and, therefore, precludes the trial court=s determination that an ERISA plan existed as
a matter of law.  Issue No. 8 is
sustained.  Issue No. 1, to the extent
that it challenges the same ground as Issue No. 8, is also sustained.  Because this portion of the summary judgment
is being remanded for determination of a fact issue, we do not reach Issue No.
9 which alleges that Provident abused its discretion in handling Dr. Knott=s claim. 
TEX.R.APP.P. 47.1. 








In Issue
No. 2, Dr. Knott addresses a summary judgment ground wherein Provident alleged
that the termination of Dr. Knott=s benefits in 1998 did not constitute a breach of the insurance policy
because he was not totally disabled when the termination occurred.  In order to analyze the summary judgment
evidence regarding the level of Dr. Knott=s disability at the time his benefits were terminated in 1998, a
construction of the policies= definition of total disability is required. Interpretation of
insurance contracts is governed by the same rules as interpretation of other
contracts.   Trinity Universal Insurance
Company v. Cowan, 945 S.W.2d 819, 823 (Tex.1997).  Because the construction of a document is a matter of law, we
review the matter on a de novo basis. 
See In the Matter of Humphreys, 880 S.W.2d 402, 404 (Tex.), cert. den=d, 513 U.S. 964 (1994); JVA Operating Company v. Kaiser-Francis Oil
Company, 11 S.W.3d 504, 506 (Tex.App. B Eastland 2000, pet=n den=d). 

Each of
the policies contained the following definition: ATotal Disability means that due to Injuries or Sickness, you are unable
to perform the duties of your occupation.@  With respect to the dispute at
hand, the most important words are Athe duties of your occupation.@  Provident contends that Dr.
Knott cannot be totally disabled under the policies unless he is unable to
perform all the duties of his occupation.  On the other hand, Dr. Knott asserts that he is disabled if he is
unable to perform any duty of his occupation.

We find that
the construction of the policies= definition of total disability is governed by a series of Texas
Supreme Court cases dealing with total disability policies.  Commonwealth Bonding & Casualty Ins. Co.
v. Bryant, 240 S.W. 893  (Tex.1922),
involved an insurance policy which provided for the payment of weekly total
disability benefits if the insured sustained injuries which would Awholly disable and prevent the insured from
performing any and every kind of duty pertaining to his occupation.@  The
court refused to give a literal interpretation to the policy=s definition of total disability.   Instead, the court ruled that the insured
was totally disabled if he was substantially unable, in the exercise of
ordinary care, to perform every material duty pertaining to his
occupation.  








In Great
Southern Life Ins. Co. v. Johnson, 25 S.W.2d 1093, 1097 (Tex. Comm=n App. 1931, holding approved), the insurance
policy provided for total disability benefits if the insured was Awholly prevented from performing any work for
compensation or profit or from following any gainful occupation.@   The
court further stated:

A policy
requiring payment for total disability ordinarily is not one of indemnity
against loss of income but against loss of capacity to work.  Cooley=s Briefs on Insurance (2d Ed.) 5536. 
ATotal disability@ is necessarily a relative matter, and must
depend chiefly on the peculiar circumstances of each case and on the nature of
the occupation or employment and the capabilities of the person injured.  It does not mean absolute physical
disability of the insured to transact any kind of business pertaining to his
occupation, but exists if he is unable to do any substantial portion of the
work connected therewith.  (Emphasis
added)  

 

Thus, Johnson
modified Bryant by deleting the requirement that every material duty be
impacted.  The court in Prudential
Insurance Company of America v. Tate, 347 S.W.2d 556 (Tex.1961), reaffirmed the
holdings in Johnson.    As per
the holdings in Johnson and Tate, Dr. Knott was totally disabled
if he was unable to do any substantial portion of the work connected with his
occupation.

The
holdings in Johnson and Tate are based on policy grounds which
reject the express definitions contained in each of the insurance policies that
were at issue.  It would appear that the
holdings in these cases possibly conflict with the Texas Supreme Court=s current approach to construing insurance
policies.   In Trinity Universal
Insurance Company v. Cowan, supra at 823, the court held that, when terms are
defined in an insurance policy, those definitions control.  We would note in this regard that, after the
enactment of the ERISA in the 1970s, the vast majority of reported cases
involving disability insurance  have
been litigated in the federal court system.  
Be that as it may, the holdings in Johnson and Tate speak
directly to the meaning of total disability in an insurance context, and they
have not been overruled.








Provident
argues that Johnson and Tate are distinguishable because the
policies at issue in this case provide for the payment of partial disability
benefits.  We disagree with this
assessment.  The policies defined
partial disability as the inability to perform Aone or more, but not all@ duties.  Provident contends
that, if one harmonizes the partial disability definition of Aone or more, but not all@ duties with the definition of total
disability, the policies imply that all duties must be impacted in order to
constitute total disability.   Even if
one assumes that the policies contain an implied requirement that all duties be
impacted for the total disability provision to apply, Johnson and Tate
are still controlling because those cases rejected express requirements that
all duties be affected.

The
determination of whether or not Dr. Knott was unable to do any substantial
portion of the work connected with his occupation when his total disability
benefits were terminated is inherently a fact question.  See Prudential Insurance Company of America
v. Tate, supra at 554.  Dr. Knott
testified to various procedures which he could not perform as a result of his
disability.   This testimony raises an
issue of fact precluding summary judgment as to the ground that Dr. Knott was
not disabled when Provident terminated total disability benefits in 1998.  Issue No. 2 is sustained.








We next
address Issue No. 3, which attacks the summary judgment ground alleging that
Dr. Knott received the maximum total disability benefits to which he was due because
his disability commenced after his 65th birthday.  The Apolicy
schedule@ sections of each of the policies state as
follows: AFor periods of disability commencing after
the Insured has attained Age 65...the Maximum Benefits Periods for Total
Disability from Accident or Sickness shall be 24 months.@  The
policies do not define when a period of disability commences.[3]  Provident contends that the summary judgment
evidence conclusively established that Dr. Knott=s disability commenced after his 65th birthday because he filed his
claim after his birthday listing the date that he last worked prior to the
disability as a date occurring after his birthday.  As per Johnson and Tate=s definition of total disability, a period of
total disability commences when the insured is unable to do any substantial
portion of the work connected with his occupation.  The critical inquiry in this proceeding is whether Dr. Knott was
unable to do a substantial portion of the work connected with his occupation
prior to his 65th birthday in August 1995. 
Dr. Knott testified that his limitations had remained the same since the
accident and that they, therefore, predated his 65th birthday.  The fact that he listed a date occurring
after his 65th birthday for the Adate [he] last worked@ does not conclusively establish that his disability commenced after
his 65th birthday.   Dr. Knott could
still be working at his occupation yet unable to do any substantial portion of
the work connected therewith.   We,
therefore, find that a fact question has been raised concerning whether or not
Dr. Knott had received the maximum total disability benefits to which he was
entitled.  Issue No. 3 is
sustained.   Having sustained all
summary judgment grounds which defeated Dr. Knott=s breach of contract claims against Provident, we reverse the trial
court=s judgment in this regard and remand Dr Knott=s breach of contract claims against Provident
for trial on the merits.

Issues
Nos. 4, 5, 6, 7, 10, and 12 focus on Dr. Knott=s extra-contractual claims of bad faith and misrepresentation directed
at Provident and Gatlin=s independent executor.  Dr.
Knott alleged that Gatlin made misrepresentations to him concerning the
policies= coverage. 
He further alleged that Provident and Gatlin committed violations of
TEX. INS. CODE ANN. art. 21.21 (Vernon 1981 & Supp. 2002) and the Texas
Deceptive Trade Practices-Consumer Protection Act, TEX. BUS. & COM. CODE
ANN. ' 17.41 (Vernon 1987), and breached the duty
of good faith and fair dealing.  These
claims were attacked by several summary judgment grounds.  One of the summary judgment grounds alleged
that the claims were barred by the applicable statute of limitations which Dr.
Knott attacks in Issue No. 6.  

The gist
of Dr. Knott=s extra-contractual claims against Gatlin=s independent executor is that Gatlin
purportedly represented that the policies would provide total disability
benefits if Dr. Knott became disabled from performing any job duty for which he
was trained.  These representations were
allegedly made when Gatlin sold the policies to Dr. Knott in the 1970s.  The extra-contractual claims asserted
against Provident focus on the denial of his claim on grounds which Dr. Knott
believes are inconsistent with his construction of the meaning of total
disability under the policies.  Dr.
Knott did not file this action until 1998. 
He contends that this action is timely because he was not aware of the
deception allegedly committed by Gatlin and Provident until the time that his
benefits were terminated in 1998.   In
other words, he contends that his causes of action against Gatlin and Provident
did not accrue until 1998 and that the applicable limitation periods did not
begin to run until that time.








A cause of
action generally accrues and the statute of limitations begins to run when
facts come into existence that authorize a party to seek a judicial
remedy.  Johnson & Higgins of Texas,
Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 514 (Tex.1998), citing Murray v.
San Jacinto Agency, Inc., 800 S.W.2d 826, 828 (Tex.1990); Sabine Towing &
Transportation Co., Inc. v. Holliday Insurance Agency, Inc., 54 S.W.3d 57,
59-60 (Tex.App. - Texarkana 2001, pet=n den=d). 
In most cases, a cause of action accrues when a wrongful act causes an
injury, regardless of when the plaintiff learns of that injury or if all resulting
damages have yet to occur.  S.V. v.
R.V., 933 S.W.2d 1, 4 (Tex.1996); 
Sabine Towing & Transportation Co., Inc. v. Holliday Insurance
Agency, Inc., supra at 60. 

Dr. Knott
contends that he has been continuously disabled since the plane crash in June 1985
irrespective of the fact that he returned to work full time in August
1985.  He initially applied for
disability soon after the accident in 1986, but this claim was denied at that
time.  If his extra-contractual
allegations against Gatlin and Provident are correct, then the denial of his
initial claim was improper and caused Dr. Knott to suffer an injury at that
time.  We find that, by virtue of the
denial of his initial claim, facts came into existence in 1986 which authorized
Dr. Knott to seek a judicial remedy against Gatlin and Provident for the
extra-contractual claims which he now pursues. 
The applicable statute of limitations have, therefore, long since
expired.  Issue No. 6 is overruled.  To the extent that it challenges the same
grounds as Issue No. 6, Issue No. 1 is overruled.    In light of our ruling on Issue No. 6, we do not reach Issues
Nos. 4, 5, 7, 10, and 12.  Rule 47.1.

Finally,
Issue No. 11 reads as follows: ADid the trial court err in granting summary judgment in favor of Gatlin
and against Dr. James Knott on the basis that Gatlin was not a party to the
insurance contract?@  The motion for summary judgment filed by
Gatlin=s independent executor contained a ground
based on the allegation that Gatlin was not a party to the insurance polices at
issue.  It would appear that this ground
was included to defeat a possible claim that Gatlin=s independent executor was liable to Dr.
Knott under a breach of contract theory.  
Dr. Knott essentially agrees in his brief with the contention that Gatlin
was not a party to the insurance policies and, therefore, is not liable under a
breach of contract theory.  Dr. Knott=s brief further shows that he is only seeking
to impose liability against Gatlin=s independent executor for extra-contractual  claims which would not require privity of contract.   Our ruling regarding the expiration of the
statute of limitations on Dr. Knott=s extra-contractual claims is, therefore, dispositive of Issue No.
11.  








The trial
court=s judgment insofar as it denied Dr. James
Knott=s breach of contract claim against The
Provident Life and Accident Insurance Company is reversed, and that cause is
remanded to the trial court.  In all
other respects, the judgment of the trial court is affirmed.

 

                                                                               W. G.
ARNOT, III

                                                                              
CHIEF JUSTICE

 

March 21, 2002

Publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











     [1]An agreement was reached between Dr. Knott and
Provident whereby Provident agreed to permanently waive Dr. Knott=s premiums for the policies after the date of the plane
crash.  The record does not establish
the reason why Dr. Knott=s premiums were waived.





     [2]Provident sought and obtained removal of this case to
federal district court based upon its claim of ERISA preemption.  The federal district court ruled that Dr.
Knott=s claims were not preempted and remanded the case back
to state court.  The federal district
court=s denial of Provident=s
preemption claim is not binding on this court. 
See Soley v. First National Bank of Commerce, 923 F.2d 406, 410 (5th
Cir. 1991).  An excellent discussion of
the purposes and effects of ERISA applicability is set out in Grainger  v. Western Casualty Life Insurance Co., 930
S.W.2d 609, 614-15 (Tex.App. - Houston [1st Dist.] 1996, writ den=d).





     [3]The policies do contain a provision which provides that
successive periods of disability will be considered separate periods of
disability unless the later period of disability is due to the same or a
related cause and commences less than six months from the ending of the
previous period of disability.   This
provision only applies to situations in which one attempts to relate a
subsequent period of disability to an earlier period of disability.