**TIG INSURANCE COMPANY and Safety Lights Company, Appellants,**

v.

**VIA NET, U.S. Delivery Systems Houston, U.S. Delivery Systems, Inc., and Corporate Express, Inc., Appellees.**

No. 01–04–00102–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 19, 2005.

Rehearing Overruled Aug. 11, 2005.

David J. Plavnicky, Plavnicky & Marshall, P.C., Houston, TX, Mitchell D. Rose, Bollinger, Ruberry & Garvey, Chicago, IL, for Appellant.

Andrew J. Mytelka, Greer, Herz & Adams, L.L.P., Galveston, TX, Jeffrey N. Todd, Joseph A.C. Fulcher, Greer, Herz & Adams, L.L.P., League City, TX, Christopher Robin Richie, David R. Clouston, Patton Boggs LLP, Dallas, TX, Joseph A.C. Fulcher, Greer, Herz & Adams, L.L.P., League City, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices HIGLEY and BLAND.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellants, TIG Insurance Company ("TIG") and Safety Lights Company, sued appellee, Via Net, and its corporate affiliates, appellees, U.S. Delivery Systems Houston, U.S. Delivery Systems, Inc., and Corporate Express, Inc.[1] for various causes of action, including breach of contract and fraud, based on appellees' failure to add Safety Lights as an additional insured on a liability policy. In one issue, appellants complain that the trial court erred in granting a take-nothing summary judgment against them based on appellees' affirmative defense of statute of limitations.

We reverse and remand.

### Factual and Procedural Background

Via Net was a vendor for Safety Lights during the time period at issue in this case. Also during that time, Safety Lights had a company policy, which required its vendors to add Safety Lights as an additional insured on the vendor's liability policy. On March 19, 1996, a Safety Lights representative sent a letter to Via Net, stating that Via Net was required to provide a certificate of insurance, evidencing that Safety Lights had additional insured status under Via Net's coverage. Later, another Safety Lights representative called Via Net and informed it that, in order to remain an active vendor with Safety Lights, it was required to add Safety Lights as an additional insured under its coverage.

Lumbermens Mutual Casualty Company ("Lumbermens") issued a commercial general liability ("CGL") policy, providing coverage to Via Net for the period of February 28, 1997 through February 28, 1998. At some point, Safety Lights received a certificate of insurance, dated February 28, 1997, from Sedgwick James of Washington ("Sedgwick"), an insurance broker authorized to enter into binders on behalf of Lumbermens. The certificate of insurance was issued to Safety Lights as "holder." The certificate lists Via Net and U.S. Delivery, subsidiaries of Corporate Express, as insureds under the Lumbermens policy. The top of the certificate provides, "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." The bottom of the certificate provides, "Certificate holder [Safety Lights] is added as additional insured re: general liability."

On June 25, 1997, Guy Wright, an employee of either Via Net or U.S. Delivery, was injured while delivering a steel plate to Safety Lights. Based on his injuries, Wright brought suit against Safety Lights. On October 27, 1997, Safety Lights's counsel sent a letter to Sedgwick, requesting defense and indemnity in the *Wright* litigation based on the certificate of insurance. On December 9, 1997, Safety Lights received a letter from a representative of Lumbermens, informing Safety Lights that it was not an additional insured under the Lumbermens CGL policy.

Safety Lights and its insurer, TIG, settled the *Wright* litigation on November 16, 1999 for $235,000. Safety Lights incurred defense costs in that litigation of $38,685.02, which were also paid by TIG.

In February 1999, Safety Lights and TIG brought suit against Sedgwick and

---

1. The corporate relationships between appellees is not entirely clear from the record but does not appear to bear on the resolution of this appeal. We also note that, other than in the style of the case, the parties treat U.S. Delivery Systems Houston and U.S. Delivery Systems, Inc. as one entity; therefore, so shall we, referring to it as "U.S. Delivery."

Lumbermens, asserting various claims and seeking a declaration that Lumbermens was obligated to defend and indemnify Safety Lights in the *Wright* litigation. The United States District Court for the Southern District of Texas, the Honorable Nancy Atlas presiding, granted summary judgment in favor of Sedgwick and Lumbermens on January 26, 2001.[2] Judge Atlas concluded, *inter alia,* that Safety Lights was not entitled to insurance coverage by virtue of the certificate of insurance and that Safety Lights's and TIG's claims for negligent and fraudulent misrepresentations fail as a matter of law because it was not reasonable for Safety Lights to believe that it had coverage based on Sedgwick's representation of coverage in the certificate.[3]

Safety Lights and TIG, under its subrogation rights, filed the instant action against appellees on December 7, 2001, asserting causes of action for breach of contract, negligence, deceptive trade practices, fraud, and negligent misrepresentation. The suit was premised on appellees' alleged failure to add Safety Lights as an additional insured on the Lumbermens policy. As damages, appellants sought to recover "all sums paid in settlement and defense" of the *Wright* litigation. U.S. Delivery and Corporate Express filed answers in which they asserted the affirmative defense of limitations. Each also filed a Rule 166a(c) motion for summary judgment, asserting that appellants' claims were time barred.

In their respective motions for summary judgment, appellees contended that the alleged breach occurred "shortly after" March 1996. Appellees asserted that Safety Lights should have discovered the alleged breach of contract when it received the Sedgwick certificate of insurance. Appellees concluded that appellants' breach of contract claim is time barred because appellants waited more than four years from receipt of the certificate to assert their cause against appellees.

In response, appellants abandoned their negligence, deceptive trade practices, and negligent misrepresentation claims, but maintained that their fraud and breach of contract claims were timely filed. Appellants disagreed that they should have discovered the breach of contract when they received the certificate of insurance. Rather, appellants contended that Safety Lights could not have discovered the breach until December 9, 1997, when Safety Lights received notification that it was not an additional insured. Following a hearing on the motions, the trial court concluded that appellants' fraud and breach of contract claims were barred by the applicable statutes of limitations, granted the motions for summary judgment on that basis, and signed a take-nothing judgment in appellees' favor.

In one issue, appellants challenge the granting of the motions for summary judgment on their breach of contract claim.[4]

## Standard of Review

 The standard of review for a traditional summary judgment is well established: the movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and the

---

2. *TIG Ins. Co. v. Sedgwick James,* 184 F.Supp.2d 591, 606 (S.D.Tex.2001), *aff'd,* 276 F.3d 754 (5th Cir.2002).

3. *Id.* at 603–04.

4. On appeal, appellants have also abandoned their fraud claim.

court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A motion for summary judgment must stand or fall on the grounds expressly presented in the motion. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). We may not affirm or reverse a summary judgment on a ground not presented to the trial court. *Travis v. City of Mesquite*, 830 S.W.2d 94, 99–100 (Tex. 1992); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979).

 A defendant moving for summary judgment on the affirmative defense of limitations has the burden to establish conclusively that defense as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). In this regard, the defendant must conclusively prove when the cause of action accrued. *Id.* If it applies and has been pleaded or otherwise raised, the defendant has the burden to negate the discovery rule. *Id.* The defendant may do so by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury. *Id.* If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary-judgment proof raising a fact issue in avoidance of limitations. *Id.* On appeal, the movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999).

## Discovery Rule[5]

 The discovery rule is a limited exception to a statute of limitations and applies only if the nature of the plaintiff's

---

5. Appellees contend that appellants cannot rely on the discovery rule because it was not raised in their pleadings; rather, it was raised for the first time in appellants' response to appellees' motions for summary judgment. Appellants respond that the applicability of the discovery rule was tried by consent in the summary judgment proceedings. We agree with appellants. It was appellees who raised the discovery rule in their motions for summary judgment when they asserted that Safety Lights should have discovered any alleged breach of contract when it received the certificate of insurance. At the hearing on the motions for summary judgment, both sides engaged in argument regarding the discovery rule without objection. Thus, the issue was tried by consent. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex.1991) (recognizing that affirmative defense is tried by consent when summary judgment movant raises defense for first time in its motion for summary judgment and non-movant fails to object to newly raised defense before judgment rendered); *Mayes v. Goodyear Tire & Rubber Co.*, 144 S.W.3d 50, 54 (Tex.App.-

Houston [1st Dist.] 2004, pet. filed) (treating unpled cause of action for negligent entrustment as tried by consent because plaintiff/appellant (1) did not object to variance between pleadings and appellee's characterization of his claims and (2) presented appellate argument that fact issues exist in regard to negligent entrustment); *De La Morena v. Ingenieria E Maquinaria De Guadalupe, S.A.*, 56 S.W.3d 652, 659 (Tex.App.-Waco 2001, no pet.) (holding unpled affirmative defense raised by non-movant for first time in response to motion for summary judgment and properly supported by evidence can defeat summary judgment if movant fails to object in trial court); *Wyrick v. Tillman & Tillman Realty, Inc.*, No. 03–00–00061–CV, 2001 WL 123877, at *2 (Tex.App.-Austin 2001, no pet.) (not designated for publication) (concluding that discovery rule assertion of non-movant was tried by consent, even though not pled, because non-movant raised discovery rule in her response to motion for summary judgment and movant did not object in trial court).

injury is both inherently undiscoverable and objectively verifiable. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex.1996). If these two factors are met, then the discovery rule defers the accrual of a cause of action until the plaintiff knew or, through the exercise of reasonable diligence, should have known of the facts giving rise to the cause of action. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex.2001). Thus, a summary-judgment movant can negate the discovery rule by showing that it does not apply as a matter of law or by proving that there is no issue of material fact as to when the plaintiff discovered or should have discovered the nature of the injury. *Howard v. Fiesta Tex. Show Park, Inc.*, 980 S.W.2d 716, 719 (Tex.App.-San Antonio 1998, pet. denied) (citing *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990) and *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n. 2 (Tex.1988)). Appellants contend that appellees failed to meet their summary-judgment burden of proving, as a matter of law, that there is no genuine issue of material fact as to when appellants discovered, or in the exercise of reasonable

diligence should have discovered, that appellees had breached the alleged agreement to add Safety Lights as an additional insured.[6] *See Wagner & Brown*, 58 S.W.3d at 734.

The parties agree that, to comply with the applicable statute of limitations, appellants' breach of contract claim must have been brought within four years of the date that the cause of action accrued. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.051 (Vernon 1997); *see also id.* § 16.004 (Vernon 2002). Generally, a cause of action for breach of contract accrues on the date of the alleged breach. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). But, if the discovery rule applies, the accrual of a breach of contract claim is deferred until the plaintiff knew or, exercising reasonable diligence, should have known of the breach and resulting injury. *See Wagner & Brown*, 58 S.W.3d at 734; *KPMG Peat Marwick*, 988 S.W.2d at 749; *see also Wilson v. John Daugherty Realtors, Inc.*, 981 S.W.2d 723, 728 (Tex. App.-Houston [1st Dist.] 1998, no pet.)

---

**6.** On appeal, U.S. Delivery contends that appellants' breach of contract claim is not the "type of injury" that by its nature falls into the category of being inherently undiscoverable. Specifically, U.S. Delivery Systems writes, "The discovery rule should not apply to a garden-variety claim for breach of contract such as this because the wrongful conduct and resulting injury in breach of contract cases are not 'inherently undiscoverable.'" However, neither U.S. Delivery nor Corporate Express sought summary judgment on the ground that the type of injury involved here is categorically not inherently undiscoverable. That is, appellees never contended that appellants' claimed injury is by its nature inherently discoverable. Instead, appellees asserted in their respective motions for summary judgment that, under the specific facts of this case, Safety Lights should have discovered the lack of coverage when it received the certificate of insurance. Such assertion presumes the ap-

plication of the discovery rule. We may not affirm a summary judgment on a ground not addressed in the summary judgment proceeding. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979). We acknowledge that Corporate Express asserted that appellants' injury was not inherently undiscoverable in its reply to appellants' response to the motions for summary judgment. However, in the absence of the nonmovant's consent, a movant may not raise a new ground for summary judgment in a reply to the nonmovant's response. *Sanders v. Capitol Area Council*, 930 S.W.2d 905, 911 (Tex.App.-Austin 1996, no writ); *RR Publ'n & Prod., Inc. v. Lewisville Indep. Sch. Dist.*, 917 S.W.2d 472, 473 (Tex.App.-Fort Worth 1996, no writ). Thus, we make no determination whether the injury here was inherently undiscoverable and assume *arguendo* that the discovery rule applies to appellants' breach of contract claim.

(holding that summary judgment movant did not conclusively negate discovery rule with regard to breach of contract claim).

In their respective motions for summary judgment, appellees asserted that Safety Lights should have discovered the breach of contract when it received the Sedgwick certificate of insurance. Appellants responded that Safety Lights could not have reasonably discovered that it was not an additional insured until December 9, 1997, when Safety Lights received notification from Lumbermens that it was not an additional insured under the policy.

"Discovery" occurs when "a plaintiff had knowledge of such facts as would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action." *Hoover v. Gregory*, 835 S.W.2d 668, 671 (Tex.App.-Dallas 1992, writ denied). Stated differently, when a plaintiff possesses sufficient facts that would lead a reasonable person to make an inquiry, the plaintiff will be charged with sufficient notice under the discovery rule. *See Lopez v. Martin*, 10 S.W.3d 790, 792 (Tex.App.-Corpus Christi 2000, pet. denied); *L.C. v. A.D.*, 971 S.W.2d 512, 515 (Tex.App.-Dallas 1997, pet. denied); *see also Prostok v. Browning*, 112 S.W.3d 876, 898 (Tex.App.-Dallas 2003, pet. granted) (concluding that discovery rule tolled limitation statutes until time plaintiffs had knowledge of facts that would have led prudent person to make an inquiry). Accordingly, the discovery rule expressly mandates that a plaintiff exercise reasonable diligence to discover facts concerning the acts or omissions. *Childs*, 974 S.W.2d at 47; *L.C.*, 971 S.W.2d at 515. Because the rule requires reasonable diligence, the tolling of the limitations statute by the discovery rule ends when the party claiming the benefits of the rule acquires knowledge of facts, conditions, or circumstances that would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action. *Stewart Title Guar. Co. v. Becker*, 930 S.W.2d 748, 756 (Tex.App.-Corpus Christi 1996, writ denied); *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 754 (Tex.App.-Amarillo 1995, writ denied).

When Safety Lights discovered or should have discovered that appellees failed to add it as an additional insured, and whether Safety Lights exercised due diligence in so discovering, are questions of fact. *See Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 637 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Southwestern Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex.App.-Houston [1st Dist.] 1992, writ denied). But, if reasonable minds cannot differ about the conclusion to be drawn from the facts in the record, then the start of the limitations period may be determined as a matter of law. *Childs*, 974 S.W.2d at 44.

Assuming, without deciding, that the discovery rule applies to appellants' breach of contract claim, we examine the record to determine whether appellees met their evidentiary burden to conclusively establish that appellants did not file suit within the applicable period after the date appellants discovered or should have discovered appellees' failure to add Safety Lights as an additional insured. That is, we determine whether appellees proved as a matter of law that no genuine issue of material fact exists about when Safety Lights discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury.

It is undisputed that appellants sued appellees on December 7, 2001 and that the statute of limitations for breach of contract is four years. Thus, to sustain their burdens of proof, appellees were re-

quired to offer summary judgment evidence to show, as a matter of law, that, before December 7, 1997, appellants knew or in the exercise of reasonable diligence should have known that appellees had failed to add Safety Lights as an additional insured. *See Rhone–Poulenc*, 997 S.W.2d at 224. Because this is a summary judgment proceeding, we make all reasonable inferences and resolve all doubts in appellants' favor with regard to the summary judgment evidence. *M.D. Anderson Hosp. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000).

Appellees offered the Sedgwick certificate of insurance to support their summary—judgment contention that Safety Lights should have discovered appellees' failure to add Safety Lights as an additional insured when Safety Lights received the certificate. According to appellees, the certificate establishes conclusively that, in the exercise of reasonable diligence, appellants should have discovered the nature of their injuries as early as February 1997 but no later than October 1997.[7] In particular, appellees rely on the following language of the certificate: "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." Appellees contend that this language would have caused a prudent person to inquire whether appellees had added Safety Lights as an additional insured. If Safety Lights had so inquired, then it would have learned that appellees had failed to add it as an additional insured.

We do not agree that Safety Lights's receipt of the certificate of insurance establishes as a matter of law that, in the

exercise of reasonable diligence, appellants should have known that appellees had breached the alleged agreement to have Safety Lights made an additional insured on appellees' policies. Appellees' reading of the certificate considers neither the purpose of the certificate nor its other language. Stated simply, appellees do not provide a contextual reading of the cited disclaimer language. In this regard, it is useful to understand the purpose of insurance certificates.

■■■ A certificate of insurance is a document issued by or on behalf of an insurance company to a third party who has not contracted with the insurer to purchase an insurance policy. 1 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 6.37A at 809 (4th ed.2001); *see also* BLACK'S LAW DICTIONARY 240 (8th ed.2004) (defining certificate of insurance as document acknowledging that insurance policy has been written, and setting forth in general terms what policy covers). One noted insurance law commentator, Allan Windt, explains that the most common type of certificate is that provided for informational purposes to advise a third party of the existence and amount of insurance issued to the named insured. 1 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES at 809. Such informational certificates are usually issued in conjunction with a contractual relationship between a third party and the named insured, requiring that the named insured have a particular amount and type of insurance. *Id.* In addition to describing the insurance available to the named insured, Windt points out that a certificate may also convey information that the certificate holder is an additional insured under the

---

7. Although the exact date of Safety Lights's receipt of the certificate was not shown, it is undisputed that the certificate was dated February 28, 1997 and that appellants had the certificate no later than October 27, 1997, when appellants' counsel requested Lumbermens to provide coverage as represented in the certificate of insurance.

policy issued to the named insured.[8] *Id.* at 809–10. Indeed, the certificate here provides that "Certificate holder [Safety Lights] is added as additional insured re: general liability."

With regard to general liability coverage, the Sedgwick certificate informs the holder that the Lumbermens CGL policy is an occurrence, rather than a claims—made policy. The certificate gives the policy number, effective dates for the liability coverage, and lists the various coverage limits under the policy. The certificate indicates that Via Net and U.S. Delivery, as subsidiaries of Corporate Express, are the primary insureds.

In addition to the provision relied on by appellees that the certificate was issued as a matter of information only, conferred no rights upon Safety Lights, and did not amend, extend, or alter the coverage afforded by the policies listed, the certificate also contains the following disclaimer provision under the heading "Coverages":

> This is to certify that policies of insurance listed below have been issued to the insured named above for the policy period indicated. Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all of the terms, exclusions and conditions of such polices.

When read contextually, the focus of the certificate's disclaimer language, in both the provision relied on by appellees and the provision under the heading "Coverages," could be construed as a warning to the certificate holder, i.e., Safety Lights, that the coverage information described in the certificate may not be the same as the coverage actually provided by the applicable policy. When viewed in the light most favorable to appellants, and in context of the certificate as a whole, the disclaimer language on which appellees rely could reasonably be interpreted to mean that, as an additional insured, Safety Lights had the same coverage as the primary insureds on the policy, subject to the policy's terms, exclusions, and conditions. *Cf. Pekin Ins. Co. v. Am. Country Ins. Co.*, 213 Ill.App.3d 543, 548, 157 Ill.Dec. 648, 651, 572 N.E.2d 1112, 1115 (1991) (relying on same disclaimer language as in this case, court held that certificate of insurance served to inform undisputed additional insured that it had same coverage as named insured, subject to terms and exclusions of policy, regardless of whether certificate indicated greater coverage than actually provided under policy).

▮ Making a reasonable inference in favor of appellants, as we must, the disclaimer language found in the certificate of insurance, including that cited by appellees, serves to warn Safety Lights that *coverage* may be different in the policy

---

8. Commentator Windt also explains that a second type of insurance certificate is "one that, by its terms, *itself causes* the party to which the certificate is issued to become an additional insured." 1 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 6.37A at 810. In the federal suit, Judge Atlas held that the Sedgwick certificate of insurance did not make Safety Lights an additional insured when Safety Lights was not so named in the insurance policy. *Sedgwick James,* 184 F.Supp.2d at 598. Appellants do not contend in this suit that the certificate *creates* coverage and they do not seek coverage here. Rather, appellants seek compensation from appellees for their alleged breach of their contractual duty to add Safety Lights as an additional insured on the CGL policy. Nonetheless, the Sedgwick certificate still served to *inform* Safety Lights, albeit incorrectly, that it had been made an additional insured under the policy. The summary judgment record contains uncontroverted evidence that the certificate was sent to Safety Lights, at its request, for informational purposes to show that it had been added as an additional insured on the policy.

than that listed in the certificate. And, it serves to warn Safety Lights that, to the extent that there is a conflict regarding *coverage*, the policy's language will control. Warning a certificate holder that the *coverage* identified in the certificate may not be the same as the *coverage* in the policy, is not synonymous with warning a certificate holder that it may not be an additional insured.[9] This is particularly true when, as here, the certificate holder receives the certificate as proof that it had been made an additional insured and when the certificate expressly states that the certificate holder is an additional insured. Thus, a plausible, alternative reading of the certificate is available under which Safety Lights would not have been alerted to its lack of additional insured status. To the contrary, the fact that it was being warned by Sedgwick about possible *coverage* discrepancies between the certificate and the policy may have served to reaffirm Safety Lights's belief that it was insured.[10] In any event, reasonable minds could differ whether the certificate served to put Safety Lights on notice that it should further inquire into its additional insured status.

9. The term "coverage" in the insurance context "normally refers" to "the amount and extent of risk included in the scope of the policy." *Aid Assoc. For Lutherans v. United States Postal Serv.*, 321 F.3d 1166, 1176 (D.C.Cir.2003); *see also* BLACK'S LAW DICTIONARY 372 (7th ed.1999) (defining "coverage" as "[i]nclusion of a risk under an insurance policy; the risks within the scope of an insurance policy").

10. In the trial court and on appeal, appellees rely primarily on *Sabine Towing & Transp. Co. v. Holliday Ins. Agency, Inc.*, 54 S.W.3d 57 (Tex.App.-Texarkana 2001, pet. denied). Following a bench trial, the trial court in *Sabine Towing* entered a take-nothing judgment against the plaintiff who sued an insurance agent under theories of negligent misrepresentation and violations of Texas Insurance Code article 21.21. *Id.* at 58–59. The plaintiff's claims arose from the insurance agent's representation that the plaintiff was an additional insured under a contractor's liability policy. *Id.* at 58. In determining the legal and factual sufficiency of the trial court's judgment, the *Sabine Towing* court held that the trial court properly determined that the claims were barred by the applicable two-year statute of limitations. *See id.* at 62–63. In reaching its holding, the court concluded that the discovery rule did not operate to delay the accrual of the plaintiff's cause of action. *See id.* at 61–63. Appellees rely heavily on *Sabine Towing* because, as in this case, the plaintiff had received a certificate of insurance, representing that it was an additional insured under the applicable policy *Id.* at 62. The certificate also contained the same disclaimer language that appellees rely on in this case. *Id.* Appellees point out that the *Sabine Towing* court reasoned that the plaintiff could have determined that it was not an additional insured by contacting the insurer after receiving the certificate of insurance. *Id.* at 62–63. The court ultimately concluded that the statute of limitations expired two years after the date the plaintiff received the certificate. *Id.* at 63.

Despite the obvious similarities with the instant case, we find *Sabine Towing* to be inapposite. Primary among the differences is the procedural posture of the two cases. *Sabine Towing* involved a full trial on the merits, while the instant suit was disposed of summarily. The appellate issues in *Sabine Towing* were sufficiency of the evidence while here, we determine whether summary judgment was properly granted. Thus, the standard of review in this case is vastly different than those employed in *Sabine Towing*. Here, we must view the evidence in a light that favors appellants; the *Sabine Towing* court properly considered only the evidence favoring the verdict in conducting its legal sufficiency review and viewed all the evidence to determine whether the verdict was so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust in conducting its factual sufficiency review. *Id.* at 59. Moreover, in addition to the certificate of insurance, the *Sabine Towing* court cited other evidence that also supported a finding that the plaintiff should have discovered its lack of additional insured status. Comparable evidence is lacking in the instant suit. For these reasons, we find *Sabine Towing* of little assistance in determining whether

## Conclusion

Viewing the evidence as required, we conclude that appellees did not meet their respective summary judgment burdens to show, as a matter of law, that no genuine issue of material fact exists regarding when Safety Lights discovered, or in the exercise of reasonable diligence should have discovered, that it had not been named as an additional insured on the Lumbermens CGL policy.[11] For this reason, we hold that the trial court did not properly grant appellees' motions for summary judgment.

We sustain appellants' sole issue. Accordingly, we reverse the judgment of the trial court and remand for further proceedings.

summary judgment was properly granted in this case.

11. On appeal, appellees also assert collateral estoppel, based on language in the federal district court's opinion that it was not reasonable for Safety Lights to rely on Sedgwick's representation of coverage in the certificate. While appellees offered the federal opinion as summary judgment evidence and referenced it in their respective motions for summary judgment to defeat appellants' claims for negligent and fraudulent misrepresentation, neither appellee did so in support of summary judgment on appellants' breach of contract claim. Thus, collateral estoppel cannot support the trial court's summary judgment on appellants' breach of contract claim. *See Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex.1993) ("[W]e hold that a summary judgment cannot be affirmed on grounds not expressly set out in the motion or response.").