**Affirmed in Part and Reversed and Remanded in Part and Memorandum Opinion filed September 30, 2014**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00646-CV

---

## PATRICE BARNES, Appellant

## V.

## THE TEXAS A&M UNIVERSITY SYSTEM AND PRAIRIE VIEW A&M UNIVERSITY, Appellees

---

### On Appeal from the 506th Judicial District Court
### Waller County, Texas
### Trial Court Cause No. 11-10-21109

---

## M E M O R A N D U M   O P I N I O N

Appellant Patrice Barnes appeals the trial court's order granting summary judgment in favor of appellees The Texas A&M University System and Prairie View A&M University on Barnes's claims for employment discrimination, hostile work environment, and retaliation. We affirm in part and reverse and remand in part.

**BACKGROUND**

Barnes was hired by Prairie View A&M University (the University) in 1994 and served as an agent in the University's Cooperative Extension Program (CEP).

In 2007, Barnes began to complain to CEP officials about alleged harassment and a hostile work environment. Barnes's complaints primarily focused on her interaction with and treatment by her supervisor, Lupe Linderos, but also expressed concerns regarding incidents with other colleagues. In response, CEP officials held a meeting with Barnes to discuss and address Barnes's concerns. Barnes's complaints continued after the meeting, so in late 2009, she was authorized to work from home by a supervisor. Approximately four months after Barnes began to work from home, the University notified her that her employment was terminated effective April 15, 2010.

Barnes filed this suit alleging disparate treatment discrimination, hostile work environment, and retaliation under the Texas Commission on Human Rights Act. Texas A&M and the University moved for summary judgment on no-evidence grounds. Barnes filed a response to the no-evidence motion, and two days later Texas A&M and the University filed a "Traditional Motion for Summary Judgment and Reply to Plaintiff's Response to Defendant's No-Evidence Motion for Summary Judgment." Ten days after Texas A&M and the University filed their traditional motion for summary judgment, the trial court granted summary judgment on no-evidence grounds.[1]

---

[1] Under a liberal construction of Barnes's live petition, Barnes asserts claims against Prairie View A&M University and the Texas A&M University System. The record indicates that Barnes obtained service of citation only on Prairie View A&M University. Nevertheless, the motion for no-evidence summary judgment in this case purportedly indicates that both Prairie View A&M University and the Texas A&M University System are making appearances to

## STANDARD OF REVIEW AND APPLICABLE LAW

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 897 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A no-evidence motion for summary judgment must be granted if (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial, and (2) the respondent produces no summary-judgment evidence raising a genuine issue of material fact on those elements. *See* Tex. R. Civ. P. 166a(i); *Navy*, 407 S.W.3d at 898.

A no-evidence motion is properly granted when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is less than a scintilla; or (d) the evidence conclusively establishes the opposite of a vital fact. *Navy*, 407 S.W.3d at 898. The evidence is less than a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the challenged fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). We indulge every reasonable inference in favor of the non-movant, resolve any doubts arising from the evidence in her favor, and take as true all evidence favorable to her. *Valence*, 164 S.W.2d at 661; *Navy*, 407 S.W.3d at 898.

contest Barnes' claim. The trial court's order awards summary judgment to both the Texas A&M University System and Prairie View A&M University. At no point did Barnes challenge Texas A&M University System's participation in the case; therefore, any such contention is waived. *See Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003) ("An argument that an opposing party does not have the capacity to participate in a suit can be waived by a party's failure to properly raise the issue in the trial court."). And, on appeal, Barnes does not challenge the summary judgment rendered in favor of the Texas A&M University System. Therefore, Barnes waives any challenge to the judgment in favor of the Texas A&M University System. *See Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

The Texas Commission on Human Rights Act prohibits discrimination by employers based on "race, color, disability, religion, sex, national origin, or age." *See* Tex. Lab. Code § 21.051. An employer commits an unlawful employment practice if, on one or more of these grounds, it fails or refuses to hire someone; discharges someone; discriminates in any other manner against someone in connection with compensation or the terms, conditions, or privileges of employment; or limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive that person of an employment opportunity or adversely affect the person's status. *Id*. The Act is intended to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments," and the relevant parts of the Act are modeled after Title VII. *Id*. § 21.001(1); *Navy*, 407 S.W.3d at 898. Thus, we look to federal precedent for interpretive guidance. *Navy*, 407 S.W.3d at 898.

ISSUES AND ANALYSIS

In three issues, Barnes contends that the trial court erred in granting summary judgment in favor of the University on her claims of disparate treatment discrimination, hostile work environment discrimination, and retaliation.

## I.    Disparate Treatment Discrimination Claim

In her first issue, Barnes asserts that the trial court erred in granting summary judgment as to her disparate treatment discrimination claim.

In resolving discrimination cases, courts utilize a system of "burden-shifting" in which the burden of production shifts from plaintiff to defendant and then back to the plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this system, the plaintiff must first present a prima facie case of

discrimination establishing that the plaintiff (1) was a member of a protected class; (2) qualified for the employment position at issue; (3) suffered an adverse employment action, which includes termination; and (4) was treated less favorably than similarly situated members outside of the protected class. *See Reeves*, 530 U.S. at 142; *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam). Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Reeves*, 530 U.S. at 142. If the defendant produces such evidence, the burden shifts back to the plaintiff to show either (1) the stated reason was a pretext for discrimination, or (2) the defendant's reason, while true, is only one reason, and discrimination was another, "motivating," factor. *Navy*, 407 S.W.3d at 899.

Barnes, who is black, is a member of a protected class. Likewise, her termination constitutes an adverse employment action. In its summary-judgment motion, the University contends that there is no evidence that Barnes received disparate treatment compared to similarly situated employees outside of the protected class. We agree.

Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct. *Monarrez*, 177 S.W.3d at 917. To prove discrimination based on disparate discipline, the disciplined and undisciplined employees' misconduct must be of comparable seriousness. *Id.* Additionally, the situations and conduct of the employees in question must be "nearly identical." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008) (per curiam). Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be "nearly identical." *Id.*

5

In her response to the University's summary-judgment motion, Barnes alleges that she was terminated because she violated University policy by working from home. To establish disparate treatment, Barnes complains that two non-black coworkers, Mike Shockey and Connie Sheppard, violated employment policies but were not disciplined. Specifically, she alleges that Shockey made racist remarks at a community outreach event in 2008, and that Sheppard was late to at least one event between 2007 and 2010. But the alleged incidents, without more, are too dissimilar to Barnes's alleged misconduct to show that Shockey and Sheppard are similarly situated coworkers; therefore, Barnes has failed to raise a fact issue on her disparate treatment claim. *See id.* at 594–95; *see also Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004) (explaining that for employees to be similarly situated, the employees' circumstances, including their misconduct, must have been nearly identical). Accordingly, we overrule Barnes's first issue.

## II. Retaliation

In a second issue, Barnes asserts that the trial court erred in granting summary judgment as to her claim against the University for retaliation.

To make a prima facie case of retaliation, a plaintiff must show that (1) the plaintiff engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal connection existed between participation in the protected activity and the adverse employment action. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Navy*, 407 S.W.3d at 900; *Feng v. Sabic Americas, Inc.*, No. 14-07-00699-CV, 2009 WL 679669, at *2 (Tex. App.—Houston [14th Dist.] Mar. 17, 2009, pet. denied) (mem. op.). Protected activities consist of opposing a discriminatory practice; making or filing a charge; filing a complaint; or testifying, assisting, or participating in an investigation, proceeding, or hearing. Tex. Lab. Code § 21.055; *Navy*, 407 S.W.3d at 900. If the plaintiff

meets this requirement, the burden shifts to the employer to rebut this presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action. *Pineda*, 360 F.3d at 487; *Navy*, 407 S.W.3d at 900; *Feng*, 2009 WL 679669, at *2. If the defendant meets its burden, then the presumption raised by the prima facie case is rebutted and the employee has the burden of proving that the employer's proffered reason is a pretext and that engaging in the protected activity was the but-for cause of the adverse employment action. *Pineda*, 360 F.3d at 485; *Navy*, 407 S.W.3d at 900; *Feng*, 2009 WL 679669, at *2. To carry this burden, the plaintiff must rebut each non-discriminatory reason given by the employer. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007); *Navy*, 407 S.W.3d at 900.

The University contends that Barnes failed to make a prima facie case because she offered no evidence that she engaged in a protected activity and no evidence that there was a causal connection between any alleged protected activity and her termination. The parties agree that Barnes's termination constitutes an adverse employment action.

### A.    Engagement in a protected activity

The only protected activity that Barnes asserts she engaged in is complaining to various supervisors. Complaining to a supervisor about harassment based on race, color, disability, religion, sex, national origin, or age by coworkers is a protected activity for the purposes of establishing a prima facie case of retaliation. *See Gonzalez v. Champion Techs., Inc.*, 384 S.W.3d 462, 472–73 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Actionable retaliation exists when an employer makes an adverse employment decision against an employee who voices opposition to conduct unlawful under the Texas Commission on Human Rights Act. *See City of Waco v. Lopez*, 259 S.W.3d 147, 152 (Tex. 2008). A plaintiff must therefore present evidence that she complained about harassment or discrimination

7

based on race, color, disability, religion, sex, national origin, or age for the complaint to qualify as a protected activity for the purpose of establishing a prima facie case of retaliation. *See Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 823–24 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Gonzalez*, 384 S.W.3d at 472–73.

Barnes offers evidence in depositions and attached e-mails demonstrating complaints to supervisors about unfair treatment by Lupe Linderos and other colleagues, but none of these complaints alleged unfair treatment based on race, color, disability, religion, sex, national origin, or age. But, evidence in the record demonstrates that Barnes complained to Dr. Carolyn Nobles in 2008 of allegedly race-based comments made by Barnes's colleague Mike Shockey. Unlike the general complaints of unfair treatment by Linderos, this complaint focuses on race-based harassment and therefore constitutes a protected activity under the Act. *See Gonzalez*, 384 S.W.3d at 472–73.

**B.    Causal  connection between participation in the protected activity and the adverse employment action**

Barnes must also offer evidence to establish a causal connection between participation in the protected activity and the termination of her employment. Circumstantial evidence sufficient to show a causal connection between an adverse employment action and participation in  a protected activity may include (1) the employer's failure to follow its usual policy and procedures in carrying out the challenged employment actions; (2) discriminatory treatment in comparison to similarly situated employees; (3) knowledge of the discrimination charge or suit by those making the adverse employment decision; (4) evidence that the stated reason for the adverse employment decision was false; and (5) temporal proximity between the protected activity and the termination. *Crutcher v. Dallas Indep. Sch.*

*Dist.*, 410 S.W.3d 487, 494 (Tex. App.—Dallas 2013, no pet.).

As evidence of the causal connection between her participation in a protected activity and her termination, Barnes points to the temporal proximity between the two events and the fact that she was not "afforded the benefit of [the University's] progressive disciplinary policy." Furthermore, Barnes points to deposition testimony of one of her supervisors, Dr. Daniels, in which he stated that "it may be possible" that Barnes's employment was terminated in retaliation for her complaints.

Although Barnes's contention that the University denied her the benefit of its "progressive disciplinary policy" may be construed as an allegation that the University did not follow its usual procedures in terminating her employment, she does not offer any evidence on this point. Other than Barnes's assertions in her summary-judgment response and appellate brief that she was not afforded this benefit, the record contains no reference to the policy, no evidence demonstrating that it exists, and no indication that the University usually follows such a policy when it terminates employees. Without more, Barnes offers no evidence that the University failed to follow its usual policies when it terminated her employment.

Similarly, Dr. Daniels's deposition testimony was not evidence of a causal link between the protected activity and termination of Barnes's employment. Although Dr. Daniels states that "it may be possible" that Barnes's employment was terminated in retaliation for her complaints, this testimony does not transcend mere suspicion. *See Ridgway*, 135 S.W.3d at 601. It is no evidence. *Id*.

Finally, Barnes asserts that, by way of her complaints to her supervisors, she engaged in a protected activity until the termination of her employment in April 2010. Barnes contends that the close temporal proximity between the termination and the time she engaged in the protected activity establishes the necessary causal

9

link. Despite her numerous complaints, though, the only complaint that constituted a protected activity was her complaint about allegedly race-based comments by Mike Shockey. The record indicates that Barnes made this complaint to Dr. Nobles in 2008. The record also indicates that Barnes complained about Shockey's comments to Dr. Daniels, though the evidence does not demonstrate when that specific complaint was made.[2]

Retaliation need not be immediate to be actionable and there is no hard-and-fast-rule that any specified amount of time is too removed to find an inference of causation. *San Antonio Water Sys. v. Nicholas*, No. 04-12-00442-CV, ___ S.W.3d ___, 2013 WL 5730592, at *7 (Tex. App.—San Antonio Oct. 23, 2013, pet. filed). But, if the only offered circumstantial evidence of causation is temporal proximity between the protected activity and the alleged retaliatory action, then "those events must be very close in time for that evidence to be sufficient for a jury to infer a retaliatory motivation." *Id*.; *see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (holding that an adverse employment action taken twenty months after the protected activity "suggests, by itself, no causality at all"); *Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 65 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (holding that a two-and-a-half year gap between the protected activity and the adverse employment action, "with nothing more, is too long to establish that there was a causal connection").

Barnes offers no evidence that she engaged in a protected activity after June 2008, and her employment was terminated effective April 15, 2010. Without more,

---

[2] We are mindful that we must construe the summary-judgment evidence in the light most favorable to Barnes, but we see no scenario in which the evidence demonstrates that Barnes made complaints about Shockey's comments to Dr. Daniels shortly before her termination. Although Barnes asserts that she made general complaints up until she was terminated, in her own deposition testimony Barnes stated that the complaints concerned "the issues that were going on in the county office," not past statements made in 2008 by Shockey.

her evidence that she engaged in a protected activity nearly two years prior to the termination does not establish the necessary causal link to support her prima facie case. *See id.*

We overrule Barnes's second issue regarding her retaliation claim.

### III.    Hostile Work Environment Claim

In a third issue, Barnes asserts that the trial court erred in granting summary judgment as to her hostile work environment claim against the University.

The University argues that Barnes failed to raise a fact issue on this claim; however, a review of the record reveals that the University never asserted a no-evidence point as to Barnes's hostile work environment claim in its no-evidence motion for summary judgment. The University raised its no-evidence point regarding Barnes's hostile work environment claim only once, in a reply to Barnes's response.[3] Summary judgment grounds may not be raised for the first time in a reply. *See* Tex. R. Civ. P. 166a(i); *TIG Ins. Co. v. Via Net*, 178 S.W.3d 10, 16 n.6 (Tex. App.—Houston [1st Dist.] 2005), *rev'd on other grounds*, 211 S.W.3d 310 (Tex. 2006); *LaRue v. Chief Oil & Gas, L.L.C.*, 167 S.W.3d 866, 875–76 (Tex. App.—Fort Worth 2005, no pet.); *Meru v. Huerta*, 136 S.W.3d 383, 390 n.3 (Tex. App.—Corpus Christi 2004, no pet.) (citing Judge David Hittner & Lynne Liberato, *Summary Judgments in Texas*, 54 Baylor L. Rev. 1, 8–9 (2002)).

Because the University did not raise a no-evidence point in its motion for summary judgment regarding Barnes's hostile work environment claim, the trial court erred in granting summary judgment on that claim. Accordingly, we sustain the third issue.

---

[3]   The University's reply to Barnes's response was included in its motion for traditional summary judgment, but this motion was not served at least twenty-one days before the time specified for hearing. *See* Tex. R. Civ. P. 166a(c).

## Conclusion

We affirm the trial court's order granting summary judgment to the University on Barnes's claims of disparate impact discrimination and retaliation. We reverse the trial court's order granting summary judgment to the University on Barnes's claim of hostile work environment. We sever and remand that claim for further proceedings consistent with this opinion.


/s/    Ken Wise
       Justice


Panel consists of Chief Justice Frost and Justices Jamison and Wise.