KAW BRICK COMPANY, Appellant, v. HOGSETT & WOODWARD, Respondents.

### Kansas City Court of Appeals, January 24, 1898.

Principal and Agent: INSURANCE BROKER: CONSIDERATION: ATTEMPTED PERFORMANCE: ACTION. The non-performance of a gratuitous executory contract constitutes no cause of action, but where an insurance broker enters upon the performance of providing a customer with a certain amount of good insurance, although the undertaking be gratuitous, it becomes his duty to conform to the instructions given, and for neglect therein he will be liable.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

*Botsford, Deatherage & Young* for appellant.

(1) In the absence of and apart from each and all of those facts proving as a matter of fact a contract for a continuing employment on the part of defendants, the law presumes that all general employments are at will merely, and the burden of proving an employment for a definite period rests upon him who alleges it. Mechem on Agency, sec. 210. (2) The fact of an agency may not only be proven by parol testimony, but also by the acts of the parties. *Brooks v. Jameson*, 55 Mo. 505; *Rice v. Grossman*, 56 Mo. 434; *Franklin v. Ins. Co.*, 52 Mo. 461; *Hull v. Jones*, 69 Mo. 587; *Werth v. Ollis*, 61 Mo. App. 401; *Bank v. Porter*, 52 Mo. App. 244; 7 Am. and Eng. Ency. of Law, p. 100. (3) The ten per cent of premiums paid by plaintiff, which was retained by defendants as compensation for their services as plaintiff's brokers, was an ample and liberal consideration for the contract with, and employment of, defendants. May on Ins. [2 Ed.], sec. 124; Wharton on Neg., sec. 437; Mechem on Agency, sec. 478; *Criswell v. Riley*, 30 N. E. Rep. 1101; s. c., 5 Ind. App. 496.

*Yeager & Strother* for respondents.

(1) There was no consideration for the agreement "to place" the insurance, and there was none for the agreement "to keep" insured. These agreements were therefore void. *Brewery Co. v. Schoenlau*, 32 Mo. App. 357; *Thorne v. Deas*, 4 Johnson (N. Y), 84;

*Balfe v. West*, 13 C. B. (4 J. Scott) 466; *Benden v. Manning*, 2 N. H. 289; Story on Bailments [6 Ed.], p. 162, sec. 169; Doctor and Student [Muchall's Ed. 1874], p. 175, ch. 24.

GILL, J.—Plaintiff sued the defendants for damages by reason of their failure to keep plaintiff's brickyard property insured according to an alleged agreement between the parties. At the close of plaintiff's evidence the trial court sustained a demurrer thereto; plaintiff submitted to an involuntary nonsuit, which the court refused to set aside on motion, and the case has been brought here by appeal.

Plaintiff's testimony tended to establish about this state of facts: On November 23, 1892, the general manager of the plaintiff's brick manufactory at Kansas City went to the office of defendants, who were insurance brokers, and applied for $7,000 insurance on the brickyard plant. Defendants did not themselves represent any insurance companies; they were mere brokers engaged in placing insurance for their customers through other agents in whose commission they shared. As to what occurred at defendants' office Mr. Eadie, plaintiff's manager, testified as follows:

STATEMENT.

"I saw Mr. Hogsett there and told him I wanted to place $7,000 worth of insurance on the Kaw Brickyard, and that I wanted them to keep us insured in good board companies to the amount of $7,000; he agreed to do so." The witness then further stated that next day defendants brought to him at his office seven policies of insurance of $1,000 each, in different companies and running for a year. And to the same effect the witness said in cross-examination: "I can only give the substance of the conversation; but I told him (Hogsett) that I wanted him to place $7,000 of insur-

ance on the Kaw Brickyard in good, responsible board companies. And to keep us insured for $7,000 in that way, and I would give him all that brick yard insurance for the Kaw yards." * * * "He agreed to the proposition that he would keep us insured for $7,000 and seemed gratified to get the business." The manager also testified that there was no agreement as to compensation to be paid to defendants for placing the insurance, but that it was understood that plaintiff was to pay only the fixed rate of insurance on brick yards, which was $35 a thousand, and that he, the manager, understood that defendants were to be paid out of the commission allowed to the insurance agents.

As already stated the seven policies of $1,000 each were issued and delivered to plaintiff November 23, 1892, and the premiums were promptly paid to defendants. About two months thereafter (that is, during the latter half of January, 1893) two of the insurance companies who had issued policies, declined to carry the risk any longer, and as they had the right to do under the provisions of their contract, took up and canceled their policies, returning the unearned premium. This was done through defendants, who assumed to act for plaintiff in the matter, and the manager had no notice of such cancellations until defendants came to him with new policies and demanded those canceled. One of these substituted policies was issued by a California company, which, although then considered solvent and responsible, failed and became worthless within a few months thereafter. The defendants were informed of this failure in May, 1893, and at least a month before plaintiff's brickyard was destroyed by fire. When so advised, defendants set about and had their customers surrender up the policies issued by this insolvent company and secure others instead, but failed so to do

with the policy of this plaintiff. Plaintiff had no knowledge of the failure of the California company until the morning after the fire occurred, and hence when the brickyard was destroyed was carrying this worthless policy. When so advised of the insolvency of the California company Mr. Eadie, the manager, met Mr. Woodward, one of the defendants, and said to him: "Mr. Woodward, you agreed to keep us insured for $7,000 in good reliable companies; now, if we have sustained any loss in the matter, $6,000 won't cover the loss; what are you going to do about it? You have been negligent in the matter. 'Well,' he says, 'we will make the loss good.'" To the same effect also testified witness Deatherage, who was present and heard the conversation between the manager and Woodward.

By reason of the worthlessness of this California policy plaintiff suffered damage and therefore brought this action, based on the alleged negligence of defendants in failing to keep said brick yard insured to the extent of $7,000 and in good board companies as they agreed to.

It can hardly be denied that the testimony in this case tends to prove that defendants agreed with plaintiff not only to *place* said $7,000 insurance on plaintiff's property, but as well to *keep* the same insured to that amount in good solvent companies. It was an employment for a definite service for an indefinite period of time. And if there was a contractual duty imposed on defendants to place and keep said insurance on plaintiff's property, then it is clear that this duty was negligently omitted and that plaintiff by reason thereof suffered loss.

*PRINCIPAL and agent: insurance broker: consideration: attempted performance: action.*

But for the defense it is contended that if there was such a promise it was unsupported by any valua-

ble consideration and can not therefore serve as the basis of an action for damages.

Conceding that defendants' agreement to place and keep $7,000 insurance on plaintiff's property was, at the time it was made, without consideration moving from the plaintiff, and yet plaintiff may recover if defendants, notwithstanding the absence of a consideration, entered upon and in part performed their agreement. Mechem in his work on agency (section 478), thus expresses the rule with reference to these gratuitous promises: "If in such a case the agent refuses to enter upon and perform the service at all; if his default consists in the mere not doing of a thing which he had promised to perform, and it be not a case where the *law* imposes upon him the duty to perform it, the fact that the performance was to be gratuitous, that the promise to perform was entirely without consideration, will furnish a complete defense to a claim for damages on account of such default. This is upon the familiar ground that the non-performance of a gratuitous executory contract constitutes no cause of action. But where on the other hand the agent has undertaken or entered upon the performance of the service, although it be gratuitous, it then becomes his duty to conform to the instructions given. If he were not willing to do so, he should have declined to serve; but having assumed the performance of the service, the trust and confidence reposed furnish a sufficient consideration for the undertaking to obey instructions, and a failure to do so will subject him to liability for the loss or damage occasioned thereby." See, also, Wharton's Neg. [2 Ed.], sec. 437; 1 May on Ins. [3 Ed.], sec. 124; Story on Bailments [9 Ed.], sec. 170; *Thorne v. Deas*, 4 Johns (N. Y.), 84.

As said by Chief Justice KENT in case last cited: "If the party who makes this (gratuitous) engagement

enters upon the execution of the business, and does it amiss, through the want of due care, by which damage ensues to the other party, an action will lie for this misfeasance.'' In short, the rule is that the gratuitous promisor will not be liable for a *nonfeasance* but will be held for a *misfeasance*.'' A case somewhat similar to this was decided by an Indiana court. *Criswell v. Riley*, 5 Ind. App. Ct. Rep. 496.

It seems to me that under the facts which plaintiff's evidence tended to prove, considered in the light of the law just stated, the defendants ought to be held for the loss sued for. If that evidence is to be credited defendants undertook to place the plaintiff's insurance, and to keep it up to the sum of $7,000; the employment was a continuing one. It was a single engagement, not *two* contracts or agreements—the one to place and the other to maintain, as it seems to be treated by defendants' learned counsel. And when defendants entered upon the performance thereof, as they did in placing the insurance and subsequently taking out two other policies in lieu of two canceled, then they must be held for every act of negligence, or misfeasance attributable to their conduct, which brought damage to the plaintiff. As said by Justice Story in treating of a similar subject: ''The mandatary has his choice, to renounce the contract or to perform it; to treat it as a nullity, or as a subsisting obligation. If he chooses to consider it in the latter light, and to act upon it as obligatory, why should he be permitted to separate the parts of the obligation, or to disjoin those which were entered into as a whole?  *  *  *  The common law has deemed it unreasonable that he should have such an indulgence. It has left him free to act or not to act; but if he chooses to act, it is at his own peril. He is not at liberty to commit a tort, and then shift his defense upon the imperfect obligation of a con-

tract under which the tort was done." Story on Bailments, sec. 170.

In our opinion the trial judge erred in sustaining a demurrer to plaintiff's evidence. The judgment will therefore be reversed and the cause remanded to be proceeded with as herein indicated. All concur.