Woodrow W. SCOTT, d/b/a Woodrow W. Scott Insurance Agency, Appellant,

v.

L. J. CONNER, Appellee.

No. 6812.

Court of Civil Appeals of Texas.

Beaumont.

May 5, 1966.

Garrison, Renfrow, Zeleskey, Cornelius & Rogers, Lufkin, for appellant.

Clark Anderson, Lufkin, for appellee.

PARKER, Justice.

This is a suit of L. J. Conner against Woodrow W. Scott, d/b/a Woodrow W. Scott Insurance Agency for negligently failing to provide fire insurance coverage on a house owned by Conner which Scott agreed to provide. The house was a total loss as a result of a fire. Judgment was rendered in favor of the plaintiff below against Woodrow W. Scott for $2,000.00. The latter appealed. The parties will be

designated appellant or appellee or by their proper names.

Conner owned a house in Lufkin, Texas, located on property on Fair Street. He alleged it was mutually agreed by and between him and Scott that Scott would secure for Conner a policy of insurance covering the property in the amount of $2,000.00 on or about February 25, 1961. Scott did secure a policy of fire insurance for Conner covering such property with the Great American County Mutual Insurance Company in the amount of $2,000.00, being a three-year policy with the premiums paid by Conner in advance for three years. In September of 1961 Conner received a notice from the Great American County Mutual Insurance Company cancelling the policy. Upon receipt of this notice Conner asked Scott to furnish him with similar insurance on the house; that Conner was assured by Scott and/or the agent and employee of Scott that they would provide Conner with insurance in the same amount. Conner alleged he relied upon this promise and that the unearned premium on the first policy was never returned to him until after the loss occurred to the house by reason of fire. This fire occurred on January 12, 1963 and the building was a total loss and became a liquidated demand on Scott in the amount of $2,000.00. After the fire Conner immediately notified Scott of the loss and for the first time Scott advised Conner he had failed to secure for him a policy of insurance covering the property destroyed by the fire. All of these acts and omissions on the part of Scott were alleged to be negligent and that as a direct and proximate result of this negligence on the part of Scott, his agents, servants and employees Conner had been damaged in the amount of $2,000.00, a liquidated demand by virtue of Art. 6.13 of the Insurance Code, V.A.T.S., praying for judgment in such amount.

The affirmative defenses of Scott were: (a) that no request was made by Conner to Scott or his secretary to secure any additional insurance on the property; (b) that at no time did Scott or his secretary promise or assure in any manner Conner that he would secure additional insurance; (c) that Conner was not entitled to rely upon any assurance either actual or implied because Scott did not agree to secure other insurance for Conner; (d) that Conner was negligent in failing to attempt to secure other insurance if he desired to do so on such property, which negligence on the part of Conner was a proximate cause of any damages sustained when the building was destroyed by fire.

The case was submitted to a jury on special issues. The jury found that after September 7, 1961 and prior to the fire on January 12, 1963, Scott, his agent, servant and employee promised to provide Conner with insurance coverage on the property; that this was negligence and a proximate cause of Conner not having insurance on the property on the occasion of the fire in question; that Scott was negligent in retaining the unearned premiums due Conner before the date that such unearned premium was returned, which was a proximate cause of the failure on the part of Conner to have insurance covering the property when the fire occurred; that Conner did not fail to exercise ordinary care to determine that he had no insurance covering the property in question between September 7, 1961 and January 12, 1963.

It is undisputed: The unearned premiums referred to above were not returned until after the building was a total loss by reason of the fire of January 12, 1963. A fire insurance policy was issued by Great American County Mutual Insurance Company to Conner covering the house about February 25, 1961, with the premium fully paid for three years in advance, the amount of the policy being $2,000.00. This policy was cancelled by such company in September of 1961 and it sent the unearned premium to Scott. This unearned premium was retained by Scott until after the fire completely destroyed Conner's house on January 12, 1963. Upon receiving notice of cancellation of the policy by Great American

County Mutual Insurance Company, Conner called upon the secretary of Scott, Nora McNeil, on at least two occasions before the fire occurred. The evidence is conflicting as to these conversations.

Conner testified that he called the secretary of Scott, Nora McNeil, and directed her to replace insurance on the building or refund his unearned premiums and her reply was, "I will have Mr. Scott take care of it for you." On the second occasion Conner testified that Nora McNeil agreed and promised Conner that Scott would either return the unearned premiums or Conner could rely upon having fire insurance on his property. Since he was not notified by Scott that he did not have insurance and his unearned premium was not returned to him by Scott, Conner relied upon Scott having furnished him with a fire policy in the amount of $2,000.00 covering the house that burned. It was not until after the fire that Conner was advised by Scott that he placed no insurance on the building.

Nora McNeil testified that in the usual course of business of Mr. Scott, she sent policies of insurance to the insured and billed them for it. She took the information from Conner in connection with the cancelled policy and promised him that she would tell Mr. Scott about it and that they would take care of his return premiums; that she made a notation of this conversation and then "forgot to tell him about it the next Monday morning"; that they did not return the premiums to Mr. Conner because "she forgot about it". That she had a further telephone call in connection with this matter with Conner and further testified that from time to time in the course of business she took information on the phone with respect to people desiring insurance and thereafter wrote insurance policies for them; that this was not unusual. She was Mr. Scott's secretary and had been for about ten years. Among her duties was typing and filing. Her time was exclusively devoted to the insurance business of Scott and had so been for ten years.

She answered the phone, typed and wrote policies and endorsements. From day to day she kept notes for her boss when he was not there. Working for him, she would bring him up-to-date on what had transpired in his absence. She typed his letters and had learned how to figure rates for insurance policies. She actually typed out the fact information on the policies, type of building, rate of coverage and rate analysis without help from Scott.

Scott testified Miss McNeil had been working for him twelve years and was still employed by him. That at all times pertinent to this controversy she was an employee of his. While she was working in his office and taking the calls from Conner, she was doing what she was supposed to do, being paid for her work and for her services. In his office the normal and usual practice was for her to bring matters such as the daily report to his attention. On this particular matter, she did not bring it to his attention. It was nothing unusual for a policy holder to call his secretary about his insurance or anything else pertaining to him or his policy holders, for if he was not there she was authorized to talk, give out information to them and help them in any way she could. Further details of her work and authority in the office would simply be a repetition of items showing that she had complete authority to handle the insurance business of Mr. Scott, who held her out to be his representative in all matters except he actually issued policies under his license to write insurance. Scott had obtained insurance for Conner on other properties for some time. Scott had procured insurance on similar properties to the house that burned, and some of these policies were in force at the time of trial.

■ Appellant Scott's first point of error contends the trial court erred in refusing his motion for judgment notwithstanding the verdict and entering judgment based on the verdict of the jury for the reason that there is no evidence of probative value relating to any amount of money

damages that Conner might have sustained by reason of any act or conduct on the part of Scott or the fire in question. The damages in this particular case are considered as a liquidated demand as though a policy of insurance was in full force and effect at the time of the loss in the amount of $2,000.00, which was the amount of insurance in the cancelled policy Scott was to replace. It is undisputed the building was a total loss and that the original policy of insurance was in the amount of $2,000.00.

Appellant has cited no authority in point. The only authorities in appellant's brief on any point are as follows: Cleveland v. San Antonio Building and Loan Association (1949) 148 Tex. 211, 223 S.W.2d 226, 12 A.L.R.2d 781, and Worley v. Smith (1901), 26 Tex.Civ.App. 270, 63 S.W.2d 903. These are not applicable because we do have Art. 6.13 of the Insurance Code, which cannot be ignored. Appellant apparently contends that the measure of damages would be upon the same basis as though Scott had committed a negligent act which was a proximate cause of the fire, in which case the measure of damages would be the value of the house at the time of the fire, whether it be $20,000.00 or $200.00. We do not agree with this contention. As stated in A.L.R. 18, page 1214:

> "It may be laid down as a general rule that a broker or agent who, with a view to compensation for his services, undertakes to procure insurance on the property of another, and who fails to do so, will be held liable for his failure to do so."

and on page 1219:

> "The measure of the liability for his failure to procure insurance is the amount that would have been due under the insurance policy, provided it had been obtained."

The same principle is stated in Appleman on Insurance Law and Practice, Vol. 4, § 2269, page 133, and Vol. 12, § 7203, page 295, and also in 32 Corpus Juris 1089 and 1090; 44 C.J.S. Insurance § 172. These authorities cite cases from numerous jurisdictions having in their insurance code the same provision as Art. 6.13 of the Insurance Code of the State of Texas. A similar case is that of Stevens v. Wafer, 14 S.W.2d 295 (Tex.Civ.App.1929). Appellant's first point of error is overruled.

█ Appellant Scott has several other "no evidence" points of error as follows: The court committed material and prejudicial error in overruling defendant's motion for judgment notwithstanding the verdict and entering judgment based upon the jury verdict for the reason: (a) there is no evidence in the record that the house in question was insurable at any time; (b) there is no evidence that Woodrow W. Scott could have secured insurance for any amount of money on the property in question at any time material to this lawsuit; (c) there is no evidence of any agreement between the plaintiff and defendant for plaintiff to secure any insurance of any specific sum on the property in question; (d) there is no evidence of any agreement between the plaintiff and defendant that the defendant would procure, or could procure insurance on the property in question for such a duration that such insurance would have been in force and effect on the date of the fire; (e) there is no evidence that the monies of plaintiff held by Woodrow W. Scott would have been sufficient to purchase a policy of insurance for any sum of money that would have lasted in duration up to and including the date of the fire in question; and (f) there is no evidence of probative value in this cause that insurance for any amount could have been secured from any company, whether acceptable to plaintiff or not, covering the property in question.

In considering the "no evidence" points, we have considered that part of the record most favorable to the findings of the jury as controlling and appellant's "no evidence" points are overruled.

■ Appellant contends that since the secretary of Woodrow W. Scott was not a licensed insurance agent that any agreement she made with appellee to issue an insurance policy could not in law be a proximate cause of any loss to appellee or bind Woodrow W. Scott to write any insurance policy. Scott's testimony was that she was authorized to talk to and give out information to customers and help them in any way she could. Appellee talked to Nora McNeil on many occasions, including the conversation detailed hereinabove. It appears that Scott held her out to his customers as being authorized to advise them of his decision on insurance business coming into his office. This point of error is overruled.

■ Appellant has points of error contending that the jury finding that Conner did not fail to exercise ordinary care to ascertain that he had no insurance covering the property in question between September 7, 1961 and January 12, 1963, and the jury finding that Conner did not fail to make such inquiry to determine if he had insurance coverage on the property in question as would have been made by a reasonable and prudent person because such jury findings are so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust and wrong. In considering these points, the entire record and all evidence has been carefully reviewed and such points of error are overruled.

■ Appellant contends the court erred in failing to submit a special issue to the jury inquiring as to whether or not appellee ever accepted any promise of Woodrow W. Scott Insurance Agency to provide insurance coverage and under what terms on the property in question. The evidence shows that appellee's property was to be covered by fire insurance replacing the policy cancelled. Further, appellee requested that insurance be replaced on such property. The very request to replace the cancelled policy with another company implies that the new replacement policy should be exactly like the cancelled policy as to amount and duration. Appellee kept the premium that would have paid for it. Paraphrasing Diamond v. Duncan, 107 Tex. 256, 172 S.W. 1100 (1915): Conner had the right to rely upon Scott's performance of the agreement, and having failed, and the property being destroyed by fire with no insurance, Scott is liable for the loss, citing Mechem on Agency, § 476; Kaw Brick Co. v. Hogsett & Woodward, 73 Mo.App. 432; D. Thorne et al. v. Deas, 4 Johns. (N.Y.) 84; Backus v. Ames, 79 Minn. 145, 81 N.W. 766. Under the evidence, Conner was entitled to believe Scott had obtained such insurance for him. An insurance broker agreeing to obtain insurance owes a legal duty to obtain same and, if he cannot, to notify his principal of failure. Burroughs v. Bunch, 210 S.W.2d 211 (Tex.Civ.App.1948, wr.ref'd). The point of error is overruled.

■ The appellant contends that neither the retention of unearned premiums by appellant nor the failure to provide insurance coverage on the house was a proximate cause of appellee being without coverage. These points of error are overruled.

■ Finally, appellant contends that the retention of unearned premiums by appellant due to appellee could not in law constitute any action for negligence. Nora McNeil's agreement with appellee was to either return the unearned premiums or he could rely upon having fire insurance on his property. This point of error is overruled.

Judgment of the trial court affirmed.