In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00227-CV**
_____

**LINDA SYKES, Appellant**

**V.**

**JAMES C. WHITE, Appellee**

**On Appeal from the 136th District Court**
**Jefferson County, Texas**
**Trial Cause No. D-204,793**

---

## MEMORANDUM OPINION

Appellant Linda Sykes ("Appellant" or "Linda") filed a lawsuit against Appellee James C. White, an insurance broker, and Protective Life Insurance Company ("Protective") seeking payment of the proceeds of a life insurance policy on her husband. White filed a motion for summary judgment, and Sykes nonsuited Protective. The trial court granted White's motion for summary judgment on the grounds that Linda's claims were barred by the statute of limitations. On appeal,

1

Appellant argues that the statute of limitations was tolled because her injury was inherently undiscoverable. We affirm.

## Plaintiff's Original Petition

In October 2019, Linda Sykes filed an Original Petition, naming Protective and White as defendants. In her petition, Linda stated that she was the owner and chief executive officer of Sykes Technical Services ("STS"), and that one of the company's employees was Richard Sykes ("Richard"). According to the Petition, STS, through Linda, applied for life insurance on Richard in 1999, and Linda and Richard were still married to each other at that time. Linda alleged that White was the agent in the transaction, and White placed the life insurance policy with Empire General Life Assurance Corporation, which was later merged into Protective. According to Linda, she was the owner of the policy, STS paid the premiums, and "Linda d/b/a/ Sykes Technical Services was not only the owner but also the beneficiary[]" under the policy. Richard died on March 2, 2019, and when Linda applied for payment under the policy, she was advised that Richard had cashed in the policy and taken the proceeds before he died. Linda also then learned that premium payments stopped in 2011 and the policy was terminated for failure to pay premiums in 2012.

Linda alleged that the application for the insurance policy failed to identify "Linda d/b/a/ Sykes Technical Services" as the applicant and owner and that Linda

2

was not aware the application did not name her as the owner. In her Second Amended Original Petition, Linda pleaded the discovery rule and alleged that the error in recording the owner of the policy was inherently undiscoverable and she only discovered the error in the Fall of 2018. Linda alleged that the defendants' negligence was the proximate cause of Linda losing ownership of the policy, the ability to continue the policy, and to collect the proceeds upon Richard's death. The amended petition included the following allegation:

> If Sykes Technical Services had been recorded as the owner of the policy, Linda, as sole owner, would have been notified that premium payments had stopped. If she had been notified, she could have recommenced the premium payments or attempted to reinstate the policy. By failure to record and to recognize Sykes Technical Services or Linda as owner of the policy, and entitled to notice of the stopped premium payments, she has been damaged in the amount of the policy less the premium amounts required to maintain the policy until the death of Richard in 2019.

Linda asserted a claim against White for breach of the "duty to use reasonable care, skill, and diligence in procuring the policy, to fully explain the terms and effects of the policy, and to assure that the policy correctly recorded Linda d/b/a Sykes Technical Services as the policy owner." Linda also alleged a negligence claim against Protective. Linda alleged that the defendants proximately caused Linda to lose ownership of the policy and caused the inability to collect the proceeds of the policy on Richard's death.

3

Protective filed an answer, asserting a general denial and various defenses, including the statute of limitations. White filed an answer and amended answer, asserting a general denial and various affirmative defenses including: the statute of limitations and laches; comparative or proportional responsibility; ratification, estoppel, and waiver; failure to mitigate damages; and the plaintiff's loss was proximately caused by superseding or intervening events or the acts or omissions of other responsible persons. White and Protective filed a Joint Motion to Designate Responsible Third Person, naming the Estate of Richard Sykes as a responsible third party, the trial court granted the joint motion, and the defendants designated Richard's estate as a responsible third party.

White's Motion for Summary Judgment

White filed a traditional motion for summary judgment arguing that Linda's negligence claim was barred by the statute of limitations. White argued that the alleged errors—White's failure to identify Linda or STS as an owner on the application for the insurance policy and failure to explain the terms of the policy—occurred (if at all) in 1999, more than two decades before Linda filed her petition. White argued that, under Texas law, a party to a contract is charged with the obligation of reading it and is deemed to know its contents, and that Linda had admitted that she and Richard received the policy in 1999 and failed to rescind it within the "20-day free look period." In addition, White argued that Linda had not

4

pleaded any facts that would invoke the discovery rule exception, nor had she alleged fraudulent concealment or pleaded that the injury was inherently undiscoverable. According to White, a cause of action based on misrepresentation or failure to disclose in connection with the sale of an insurance policy accrues when the policy is issued. White also argued that an insurance agent has no duty to explain policy terms, and an insured has the duty to read the policy. White argued that "[i]t is not the fault of Defendant White that Plaintiff failed to read the Policy delivered to the Sykes in 1999." White further argued that Linda had multiple opportunities after 2001 to discover the alleged ownership error in the policy, and that when Richard assumed responsibility for paying the premiums when the couple separated, Linda failed to take any steps to confirm that he was paying the policy premiums. In addition, White argued that Linda knew the policy lapsed in 2013 and failed to bring an action within two years of the policy expiring. Additionally, White argued that under the terms of the couple's divorce decree, even if Richard had continued to pay the premiums, Linda would have been divested of any ownership interest in the policy.

The following items were attached as exhibits to the motion for summary judgment: White's affidavit; portions of Linda's deposition and exhibits; Linda's answers to White's first set of interrogatories; Linda's answers to Protective's first set of interrogatories; a Rule 193.7 Notice; Linda's response to White's second

request for admissions and exhibits; and Linda's response to White's first request for admissions. A copy of the application for the life insurance policy was attached as an exhibit to White's affidavit. The application reflects that Richard C. Sykes was the "Proposed Insured 1[,]" Linda M. Sykes was the Primary Beneficiary, and no name was listed under "Name of Applicant (Owner) if other than a Proposed Insured[.]" A copy of the life insurance policy was attached as an exhibit to the transcript of Linda's deposition. The policy lists the date of issuance as May 13, 1999, and Richard is listed as the insured and the owner. The policy also states "[t]he insured is the Owner of this policy unless someone else is named as Owner in the Policy Schedule, an endorsement, or an amendment to the application." Also attached as an exhibit to Linda's deposition was a copy of Linda and Richard's Separation Agreement, signed by both and dated February 13, 2012. The Separation Agreement lists the Protective life insurance policy as a community asset and states that Linda shall remain the beneficiary and Richard agrees to remain responsible for paying the policy premiums. The Separation Agreement also includes a certification by Linda's lawyer that he had advised her about the agreement and explained its meaning and legal effect and that Linda had acknowledged that she understood the agreement. Linda and Richard's Final Decree of Divorce was also attached as an exhibit to Linda's deposition. The Final Decree of Divorce states that Richard was

6

awarded "[a]ny insurance policy that covers Husband's life[]" as his sole and separate policy.

In Linda's deposition she testified that she agreed she kept a copy of the application in her insurance file since the purchase of the policy and that she did not review the application because "Richard was taking care of this. It was on him, and he was taking care of it." She also testified that she had a copy of the insurance policy in her possession since 1999, but she testified she did not read or review the policy when it was received because "Richard said everything was okay." Linda further testified that, after the couple separated, she did not ask Richard whether he was keeping up with the premium payments. Linda testified that the Separation Agreement did not have to say that Linda was the owner of the policy because she already was the owner. She also testified that, even though the divorce decree states that Richard was awarded "[a]ny insurance policy that covers husband's life[]" as his separate property, she disagreed with the Divorce Decree because according to Linda "[i]t wasn't his to get."

Plaintiff's Response

In her response to the motion for summary judgment, Linda argued that disputed issues of material fact precluded summary judgment. Her response argued that White's failure to record Linda or STS as the owner of the policy was "under the circumstances inherently undiscoverable until she found a copy of the Policy in

papers discarded by Richard in the Fall of 2018." Attached as exhibits to her response were: Linda's affidavit, excerpts of White's deposition transcript, excerpts of Linda's deposition transcript, a letter from Protective stating that Empire General Life Assurance Corporation merged with Protective in 2007, and a copy of the policy. Linda's affidavit states in relevant part:

> . . . I became concerned with the mental and physical health of Richard Sykes and decided to get insurance on his life in the event he became incapacitated or died, to bridge the gap while I obtained a replacement to perform the work he was doing for the business.
>
> [] James C. White was [an] insurance agent for Sykes Technical Services at that time. He was asked to obtain insurance on the life of Richard Sykes for Sykes Technical Services. Sykes Technical Services would pay for the policy and be owner, and I would personally be the beneficiary.
>
> [] The application for the Policy was filled out by James C. White in the presence of Richard Sykes and myself. He gave me a copy of it, which I took back to my office. I did not read the application because I had confidence that the insurance was being obtained in accordance with our understanding.
>
> . . .
>
> [] I did not receive a copy of the Policy. I only discovered it in the Fall of 2018 among papers discarded and left behind by Richard Sykes when he moved away to West Texas. It was the first I knew that the Policy credited Richard Sykes as owner of the Policy. . . .
>
> . . .
>
> [] Richard and I separated in 2012. In the Separation Agreement Richard Sykes agreed to make premium payments on the Policy. He then reiterated this in an addendum to the Agreement in 2013. I relied upon Richard in this because he had always been reliable in such

8

matters. And nothing in the matter suggested to me that there was any reason to doubt that I was owner of the Policy.

[] Richard and I were divorced in 2016. According to the Insurance Company, the Policy had already been terminated for failure to pay the premiums, but I did not know that. Nevertheless, the printed form for the Decree (we did not have attorneys for this) stated that any insurance on Richard's life would be owned by Richard. I did not see this language. I don't think I even looked at the printed form. All I knew was that we were getting divorced.

[] I did not have any reason to know, or to believe, that I was not the owner of the Policy until Fall of 2018.

White testified in his oral deposition that White was sure Linda agreed that Richard should be the policy owner and "Richard and Linda discussed the difference between the owner, the beneficiary, and the insured; and they both decided that Richard was to be the owner and the insured and Linda was to be the beneficiary." White also testified that Linda was present when he delivered the policy to Richard. Linda admitted in her deposition that she did not read or look at the insurance policy until 2018 "[b]ecause Richard said everything was okay[]" and she relied on Richard to review it and make sure it was accurate.

On September 3, 2020, the trial court signed an order granting White's motion for summary judgment "on the grounds that the negligence claims asserted by Plaintiff Linda Sykes are barred by the two-year statute of limitations." Linda nonsuited her cause of action against Protective and appealed the order granting summary judgment.

9

Issue

In a single issue, Appellant argues that the trial court should not have rendered judgment against her on the grounds that her claims were barred by the statute of limitations. According to Appellant, White's failure to list her as the owner of the policy was inherently undiscoverable by her, which tolled the statute of limitations until the negligence was discovered. Appellant argues that she was justified in relying on White to procure a policy that listed her as the owner, and she was justified in relying on her relationship with Richard for assurance that there was no need to question whether the policy listed Linda or STS as the owner.

Standard of Review and Applicable Law

We review grants of summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). The movant for a traditional summary judgment has the burden to establish that no genuine issues of material fact exist, and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). If the moving party produces evidence entitling it to a summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). The trial court may consider all competent evidence on file at the time of the summary judgment hearing. *See* Tex. R. Civ. P. 166a; *Lance v. Robinson*, 543 S.W.3d 723, 732 (Tex. 2018) (explaining

that a trial court does not err by relying on summary judgment evidence on file prior to the summary judgment hearing even though filed prior to the instant summary judgment record).

In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548-49. Every reasonable inference must be indulged in favor of the nonmovant, and any doubts must be resolved in the nonmovant's favor. *Id.* When, as here, the trial court grants summary judgment on specific grounds, we limit our consideration on appeal to the grounds on which the trial court granted summary judgment. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

Appellant and Appellee agree on appeal that all of Linda's claims are negligence claims and they agree that her claims for negligence are governed by the two-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). Generally, questions surrounding when a party's cause of action accrues are decided as a matter of law. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988); *Webb v. Crawley*, 590 S.W.3d 570, 583 (Tex. App.—Beaumont 2019, no pet.) (citing *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011)). "A cause of action generally accrues, and the statute of limitations begins to run, when facts come into

11

existence that authorize a claimant to seek a judicial remedy." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998). A cause of action for negligence accrues on the date when the negligent act that produces the injury is committed. *Dunmore v. Chicago Title Ins. Co.*, 400 S.W.3d 635, 641 (Tex. App.—Dallas 2013, no pet.). If the discovery rule applies to a claim, "[t]he discovery rule delays accrual until the plaintiff 'knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury.'" *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). The discovery rule is "'a very limited exception to statutes of limitations[,]'" and is available only "when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001) (quoting and citing *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455-56 (Tex. 1996)); *see also Barker v. Eckman*, 213 S.W.3d 306, 312 (Tex. 2006); *Treuil v. Treuil*, 311 S.W.3d 114, 119 (Tex. App.—Beaumont 2010, no pet.). When the defendant moves for summary judgment based on an affirmative defense such as limitations, the defendant has the burden to prove conclusively all the elements of the affirmative defense as a matter of law. *See KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.

1997). Whether an injury is inherently undiscoverable is a question of law. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006).

The discovery rule is generally restricted "to exceptional cases to avoid defeating the purposes behind the limitations statutes." *Id.* Because the discovery rule is a plea in confession and avoidance, a party seeking to avail itself of the discovery rule must plead the discovery rule as a matter in avoidance. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517-18 (Tex. 1988). "An injury is not inherently undiscoverable when it is the type of injury that could be discovered through the exercise of reasonable diligence." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011). Under the discovery rule, even if the plaintiff does not have actual knowledge of the harm, the statute of limitations begins to run when the plaintiff objectively should have known, by using reasonable diligence, of the facts giving rise to the cause of action. *See United Healthcare Servs., Inc. v. First St. Hosp. LP*, 570 S.W.3d 323, 336 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing *Syrian Am. Oil Corp., S.A. v. Pecten Orient Co.*, 524 S.W.3d 350, 360 (Tex. App.—Houston [1st Dist.] 2017, no pet.)). "'Thus, the plaintiff's lack of diligence can defeat application of the discovery rule.'" *Id.* (quoting *DeWolf v. Kohler*, 452 S.W.3d 373, 391 (Tex. App.—Houston [14th Dist.] 2014, no pet.)). A wrong or injury is not

inherently undiscoverable if it "generally is capable of detection within the time allotted for bringing such suits." *See Comput. Assocs. Int'l, Inc.*, 918 S.W.2d at 457.[1]

When entering a contract, due diligence requires that each party protect its own interests. *See Via Net*, 211 S.W.3d at 314 (citing *Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W.2d 834, 840 (Tex. 1968) ("As a party to arm's length business transactions, respondent had a duty to use ordinary care for the protection of its own interests"). Due diligence may include asking for information needed to verify contractual performance. *See id.* (citing *Wagner & Brown*, 58 S.W.3d at 736; *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)). Failing to even ask for such information is not due diligence. *See id.* (concluding that failure to ask

---

[1] *See also, e.g.*, *Dortch v. Boxer Prop. Mgmt. Corp.*, No. 01-17-00148-CV, 2018 Tex. App. LEXIS 5390, at *12 (Tex. App.—Houston [1st Dist.] July 17, 2018, no pet.) (mem. op.) (concluding that an employer's failure to enroll an employee in a long-term insurance plan despite having given assurances, was not inherently undiscoverable and "an employee who acts with due diligence would likely discover the alleged injury"); *Wakefield v. Bank of Am., N.A.*, No. 14-16-00580-CV, 2018 Tex. App. LEXIS 545, at **14-15 (Tex. App.—Houston [14th Dist.] Jan. 18, 2018, no pet.) (mem. op.) (Home purchaser brought a claim against lenders for breach of fiduciary duty and common law fraud after the limitations period passed. The court concluded that her alleged injury—buying the home at a price higher than fair market value—was not inherently undiscoverable due to "readily apparent" inaccuracies in closing documents and because "nothing prevents a buyer of property from obtaining an independent appraisal based on comparable sales[]" as the plaintiff ultimately did.); *Sabine Towing & Transp. Co., Inc. v. Holliday Ins. Agency, Inc.*, 54 S.W.3d 57, 62-63 (Tex. App.—Texarkana 2001, pet. denied) (concluding the discovery rule did not toll the statute of limitations on a claim for negligent misrepresentation of insurance coverage where the plaintiff failed "to conduct a routine check [] and inquire whether insurance coverage was in effect[]").

a contracting partner for information needed to verify contractual performance is not due diligence) (citing *Wagner & Brown*, 58 S.W.3d at 736; *HECI*, 982 S.W.2d at 886).

Analysis

Linda admitted in her deposition that she kept a copy of the application when it was made in 1999, and she never looked at the application. She also admitted that by sometime in 2007, and possibly as early as 1999, she had the policy in her file, but she failed to read it. Although the 2012 Separation Agreement listed the policy as a community asset and required Richard to pay the premiums on the policy, the uncontroverted evidence established that Linda did not take any steps to confirm that Richard was making the payments. Then, Linda and Richard's divorce decree awarded the life insurance policy to Richard as his separate property. Linda and Richard were divorced in 2016, and Linda stated in her affidavit that she did not read the divorce decree. Viewing the evidence in a light most favorable to the non-movant, the record reflects that Linda took no steps to verify that White (or the insurance companies) had listed her as the policy owner, and she failed to take any steps to verify that Richard was paying the policy premiums. The injury Linda complains of was not inherently undiscoverable because it was "capable of detection within the time allotted for bringing such suits." *See Comput. Assocs. Int'l, Inc.*, 918 S.W.2d at 457. The evidence reflects that Linda failed to exercise due diligence

because she did not read the policy application or the policy in her possession and because she did not ask her husband or the insurance agent for information to verify contractual performance. A party that has not exercised due diligence may not claim the injury was inherently undiscoverable. *See Via Net*, 211 S.W.3d at 314.

We cannot say the trial court erred in concluding that Linda failed to meet her burden to prove that White's alleged negligence or breach in failing to list her (or STS) as an owner of the insurance policy was inherently undiscoverable despite the exercise of reasonable diligence. *BP Am. Prod. Co.*, 342 S.W.3d at 66; *KPMG Peat Marwick*, 988 S.W.2d at 748; *Velsicol Chem. Corp.*, 956 S.W.2d at 530. The discovery rule did not toll the statute of limitations, and Linda's petition was filed after the statute of limitations on her claims had expired.

Citing to *Burroughs v. Bunch*, 210 S.W.2d 211, 214 (Tex. App.—El Paso 1948, writ ref'd), *Scott v. Conner*, 403 S.W.2d 453, 457 (Tex. App.—Beaumont 1966, no writ), *Rainey-Mapes v. Queen Charters, Inc.*, 729 S.W.2d 907, 908 (Tex. App.—San Antonio 1987, writ dism'd by agr.), and *Powell v. Narried*, 463 S.W.2d 43, 45 (Tex. App.—El Paso 1971, writ ref'd n.r.e.), Appellant's brief also argues that she was entitled to rely on White, as an insurance agent, to procure the correct policy as she instructed. Under Texas law, an insurance agent who undertakes to procure insurance for another owes a duty to the client to use reasonable diligence to procure the insurance or notify the client that he was unable to do so. *See May v.*

16

*United Servs. Ass'n*, 844 S.W.2d 666, 669 (Tex. 1992). However, in this case, Linda has not alleged that White failed to procure the insurance policy but rather that the policy was in Richard's name and not Linda's name.[2] The cases Appellant has cited to support her argument that she was entitled to rely on White do not address the statute of limitations, and we find them unavailing.

In addition, Appellant argues on appeal that she was entitled to rely on Richard, citing to "Texas Family Code, Chapter 721." This citation lacks the specificity necessary to identify the legal authority or point of law on which Appellant purports to rely. *See* Tex. R. App. P. 38.1(i). Citing to *Ditta v. Conte*, 298 S.W.3d 187, 191 (Tex. 2009), and *Boyd v. Boyd*, 67 S.W.3d 398, 403, 405 (Tex. App.—Fort Worth 2002, no pet.), Appellant also argues that there is a fiduciary duty between spouses, and spouses are obligated to make full disclosures to one another. Although the Texas Supreme Court has stated that "the marital relationship between spouses is a fiduciary relationship[.]" the Court further stated that "the special relationship of trust and confidence between spouses may continue and change over time." *See Ditta*, 298 S.W.3d at 191. In *Boyd*, the Fort Worth Court stated that the

---

[2] Neither party addressed whether the insurance policy was a community property asset or separate property asset at the time it was issued in 1999, and we decline to address the issue here. As we have explained herein, Linda and Richard's 2012 Separation Agreement listed the life insurance policy as a community property asset, and the 2016 Final Decree of Divorce awarded the life insurance policy to Richard as his separate property.

17

fiduciary duty arising from the marriage relationship does not continue when the spouses have retained separate counsel in a divorce proceeding. *See* 67 S.W.3d at 405. Even assuming without deciding that a fiduciary duty to disclose the named owner of the policy existed while Linda and Richard were married, applying the cases Appellant cites, no such fiduciary duty existed when the parties retained separate counsel in entering their 2012 Separation Agreement and after they were granted a 2016 divorce decree. *See Ditta*, 298 S.W.3d at 191; *Boyd*, 67 S.W.3d at 405. Additionally, the cases Appellant cites do not address the statute of limitations nor would they eliminate Linda's obligation to use due diligence to protect her own rights, if any, and we find them unavailing.

Having concluded that the trial court did not err, we overrule Appellant's single issue on appeal, and we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on July 14, 2021
Opinion Delivered August 12, 2021

Before Kreger, Horton and Johnson, JJ.